SHAFFER, Appellant,

v.

**VILLAGE OF WEST FARMINGTON et al., Appellees.**

[Cite as *Shaffer v. W. Farmington* (1992), 82 Ohio App.3d 579.]

Court of Appeals of Ohio,
Trumbull County.

No. 91–T–4573.

Decided Sept. 21, 1992.

580

*George N. Kafantaris*, for appellant.

*Robert M. Platt, Jr.*, for appellees.

NADER, Judge.

This matter is an administrative related appeal from the Trumbull County Court of Common Pleas. Appellant, Fred N. Shaffer, seeks to reverse the judgment of the trial court which "dismissed" his R.C. 737.19(B) appeal from the decision of the council of the village of West Farmington. The council had affirmed the mayor's decision to terminate appellant's employment as a lieutenant in the village police department.

The facts, as found by the trial court, which give rise to this appeal are as follows:

"1. Prior to September 25, 1990, [appellant] was employed as a paid police officer for the Village of West Farmington, Ohio, under the supervision of [appellees] Mayor Thomas Christlieb, Jr. and the Chief Marshal Perich.

"2. [Appellant] had acquired the rank of lieutenant.

"3. During the late summer and early fall of 1990, [appellant] initiated a criminal investigation of Chief Marshal Perich of the Village of West Farmington, Trumbull County, Ohio.

"4. On September 18, 1990, [appellant] without authorization and while not on duty, attempted to use the LEADS teletype terminal through the Newton Falls dispatcher in order to obtain the social security number of Chief Marshal Perich.

"5. At that time, the West Farmington Police Department (WFPD) was party to a 'radio agreement' with the Newton Falls Police Department (NFPD), whereby the WFPD was granted the use of the LEADS terminal by the NFPD.

"6. The 'radio agreement' on page 2, section 3(F) provides that the NFPD shall not provide the following:

" '(F) Permit use of the LEADS teletype by any of the West Farmington officers when off duty unless authorization is given by West Farmington Chief and such information is for official business.'

"7. On September 21, 1990, Robert T. Carlson, Chief of Police for the NFPD notified Chief Perich in writing of the violation of the radio agreement by [appellant], and formally advised Chief Perich that the WFPD was on report pertaining to such incident. Chief Carlson also advised that a recurrence of such action may be grounds for the cancellation of the radio agreement by the City of Newton Falls.

"8. During approximately August/September 1990, [appellant] contacted the Newton Falls Prosecutor concerning [appellant's] desire to file criminal charges against Chief Marshal Perich. The Prosecutor instructed [appellant] to submit the appropriate information to him for further processing. Contrary to the Prosecutor's instructions, [appellant] utilized the Prosecutor's staff, while he was out of state, to type several criminal charges against Chief Perich. According to the Prosecutor, his instructions had not been obeyed by [appellant]. * * *

"9. Chief Marshal Perich suspended [appellant] effective September 25, 1990.

"10. On September 25, 1990, [appellant] was personally served with written notification of his suspension from active duty with the WFPD for the reasons stated therein. * * *

"11. [Appellant's] suspension was certified in writing by Chief Marshal Perich to Mayor Thomas Christlieb, Jr. on September 25, 1990. * * *

"12. On September 28, 1990, the Mayor of West Farmington, Thomas Christlieb, Jr. reviewed [Chief Perich's] decision. It was the Mayor's judgment that [appellant] was to be removed from the department.
" * * *

"14. Thereafter, [appellant] appealed the Mayor's decision to the Village Council of West Farmington, Ohio, which heard Plaintiff's appeal on October 2, 1990, this date being the next regularly scheduled meeting of said Village Council.

"15. [Appellant] requested an executive session of Village Council for the purpose of conducting his appeal hearing which was conducted on said date from 9:05 until 9:57. [Appellant] appeared in person. Chief Perich appeared as a witness. * * *

"16. Village Council voted 5–1 to uphold the Mayor's decision to remove [appellant] from the WFPD on October 2, 1990. * * *

"17. [Appellant] filed his appeal with [the Common Pleas] Court on October 9, 1990."

This case was referred to a referee. There was no hearing; the case was decided on the briefs of counsel and the record on appeal. There was no transcript of proceedings before council.

Appended to appellant's brief, which was submitted to the referee, was an affidavit which states that he was not permitted to appear before the village council. The minutes of the council meeting state, in pertinent part:

"MAYRO [sic] called executive session at the request of Fred Shaffer. 9:05 Mayor, council, and solicitor retired. Mayor returned to make copies and returned [sic]. Perich called in 9:29 and out at 9:32. Mr. Sahffer [sic] came out at 9:50, council returned at 9:57.

"Executive session had been called for Lt. Shaffer's appeals hearing with council pursuant to revised code 737.19. Solicitor said one of three things can happen: 1) dismissal of charges, 2) suspension, or 3) reduction of rank, or they can uphold the Mayors [sic] decision. Motion to uphold the mayor's decision by Bowers, seconded by Dale. Roll call vote yeas except Bland—nay.

"Lt. Shaffer has been terminated from the West Farmington Police Force."

Also in evidence were letters from the Newton Falls police chief and prosecutor. These letters detailed the charges against appellant. Appellant's notice of suspension was also before the referee and the trial court.

The trial court concluded that the village had "properly and timely complied with all requirements imposed upon [it] pursuant to O.R.C. 737.19(B) relative to the removal of [appellant] from the WFPD and [appellant] has failed to meet his burden of proof regarding any factual issues he claims were decided in error."

Appellant timely appealed, and now assigns the following errors:

"1. The trial court erred to the prejudice of appellant by adopting the report of the referee without a hearing on issues of facts and law raised by appellant in his objections to the referee's report which was supported by factual affidavit.

"2. The trial court erred to the prejudice of appellant by adopting the report of the referee because an executive session was held without the consent of appellant and in violation of R.C. Sec. 121.22(G).

"3. The trial court erred to the prejudice of appellant by adopting the report of the referee which was against the manifest weight of the evidence."

Appellant's first assignment of error challenges the trial court's refusal to hold a hearing on appellant's objections to the referee's report.

Contrary to the thrust of appellant's argument, Civ.R. 53 does not *require* a trial court to hold a hearing on the objections to a referee's report. Civ.R. 53(E)(2) states that, upon consideration of objections to the report, the trial court *may, inter alia,* hear additional evidence or hear the matter itself. In the instant case, the court adopted the report of the referee after considering the objections. This act is expressly permitted by the rule.

Since the trial court's action in this case is clearly permitted under the Civil Rules, we believe appellant bears the burden of demonstrating the trial court abused its discretion by ruling as it did.

" 'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary or unconscionable. *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 87, 19 OBR 123, 126, 482 N.E.2d 1248, 1252. It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary.

"A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue *de novo,* would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." *AAAA Enterprises, Inc. v. River Place*

*Community Urban Redevelopment Corp.* (1990), 50 Ohio St.3d 157, 161, 553 N.E.2d 597, 601.

■ Appellant highlights the fact that the referee did not hold a hearing. No request for a hearing appears in the record; the parties, at least tacitly, consented to having the case heard on the transcripts and briefs. Moreover, there are sufficient evidentiary materials in the record upon which the trial court may have relied in adopting the referee's report. Specifically, the letters from the Newton Falls police chief and prosecutor support the finding that the appellant acted improperly. Thus, this court cannot say that the trial court abused its discretion by not holding a hearing on the objections to the referee's report.

Appellant's first assignment of error is without merit.

In his second assignment of error, appellant argues that the hearing before council violated R.C. 121.22, commonly known as "the Sunshine Law." Appellant principally relies on *Conner v. Lakemore* (1988), 48 Ohio App.3d 52, 547 N.E.2d 1230, which held that all proceedings conducted pursuant to R.C. 737.19 must be conducted in a public session of council.

Without addressing or endorsing the analysis of *Matheny v. Bd. of Edn.* (1980), 62 Ohio St.2d 362, 16 O.O.3d 411, 405 N.E.2d 1041, found in *Conner*, we find the instant case factually distinguishable from *Conner*. In *Conner*, the public employee requested a public hearing. In the instant action, there is some evidence (*i.e.*, council's minutes) that appellant requested an executive session. Thus, R.C. 121.22(G)(1) would permit an executive session under the facts found by the trial court in the instant case.

Appellant argues that no vote was taken to adjourn to executive session. Appellant points to the minutes of council, which fail to memorialize any such vote. Appellant argues that the absence of such a vote invalidates the proceeding, and council's subsequent decision, pursuant to R.C. 121.22(H).

■ Appellees argue that a roll call vote *was* taken, and the minutes erroneously fail to reflect this fact. It must be noted that appellant's original trial counsel did not raise this issue before the referee. Consequently, any factual issue subsequently raised by appellant (*i.e.*, whether a role call vote was held) may be ignored by the trial court unless appellant established that the evidence supporting his position could not (with reasonable diligence) have been produced before the referee. Civ.R. 53(E)(6). The purpose of this rule is clear: litigants may not sandbag the referee's report with additional evidence. The result of appellant's action, if it were permitted, would be to eviscerate the referee system.

 The minutes of a council meeting are not conclusive of the events which occurred at the meeting. In *Vinton v. James* (1923), 108 Ohio St. 220, 140 N.E. 909, the Ohio Supreme Court held that where council's clerk had failed to accurately record what had occurred at a council meeting, the minutes could be subsequently amended to conform with what a court had determined to be the truth. Applying that principle to the instant case, assuming appellant had properly raised the issue before the referee, the appellees should have been given the opportunity to establish that council adjourned to executive session, pursuant to R.C. 121.22(G), after a proper roll call vote. Appellant's failure to timely raise this issue before the referee, however, precludes him from arguing it before this court. Consequently, the second assignment of error lacks merit.

In his third assignment of error, appellant challenges the trial court's judgment on the basis that it is not supported by the manifest weight of the evidence.

 Ordinarily, this court will not reverse a trial court's judgment on the grounds that it is against the manifest weight of the evidence where some competent, credible evidence supports the judgment. In this case, the letters from the Newton Falls police chief and prosecutor constitute evidence which supports the trial court's judgment. If this were an ordinary case, we would affirm the court's factual determination based upon this evidence.

This is not an ordinary case. This is an administrative related appeal which was taken to the trial court "on questions of law and fact," pursuant to R.C. 737.19(B). As such, the trial court's procedure is different from that frequently engaged in by a trial court in other administrative related appeals (*e.g.,* those taken pursuant to R.C. Chapter 2506). See *Ballas v. Newton Falls* (Nov. 22, 1991), Trumbull App. No. 90–T–4466, unreported, 1991 WL 244633 (Nader, J., concurring).

Like police and fire department civil service appeals brought pursuant to R.C. 124.34, R.C. 737.19 permits an appeal on questions of law and fact. The procedural rules which governed appeals on questions of law and fact were set forth in R.C. 2505.21, which was repealed effective March 17, 1987. Thus, the trial court in the instant case was acting without statutory direction on the proper procedure to apply to cases such as this one.

This point is made evident by the referee's report, which states, in part:

"*Plaintiff* [appellant] has failed to meet his burden of proof regarding any factual issues he claims were decided in error." (Emphasis added.)

It is apparent that the referee believed that the appellant bore the burden of establishing that the village council erroneously resolved factual issues.

Given the very sparse record before the trial court, this erroneous assumption was prejudicial to the appellant's cause.

■ We believe that the appellant does bear the burden of establishing that the village committed *procedural* errors. To this extent, the trial court did not err by finding there was no sunshine law violation and that the village council adhered to R.C. 737.19(B).

■ The error of law, however, which requires this case to be reversed and remanded is that the trial court imposed a burden of proof on the appellant to establish he did *not* act in a manner which could lead to his termination. We believe, instead, that the village bears the burden, in the common pleas court, of establishing—on the evidence in the record and such additional evidence as the court, in its discretion, admits—that appellant's conduct warranted the discipline imposed upon him. See *Chupka v. Saunders* (1986), 28 Ohio St.3d 325, 28 OBR 393, 504 N.E.2d 9; *Lincoln Properties, Inc. v. Goldslager* (1969), 18 Ohio St.2d 154, 47 O.O.2d 316, 248 N.E.2d 57; *Newsome v. Columbus Civ. Serv. Comm.* (1984), 20 Ohio App.3d 327, 20 OBR 430, 486 N.E.2d 174. Our belief is based upon the language of R.C. 737.19, the traditional understanding of "for cause" removal of public employees, and our analysis of appeals on questions of law and fact.

R.C. 737.19(B) provides village police officers with some measure of job security. The village marshal has the exclusive authority to suspend deputies, officers or employees of the village police department "for incompetence, gross neglect of duty, gross immorality, habitual drunkenness, failure to obey orders given them by the proper authority, or for any other reasonable or just cause."

The mayor of the village is then given the responsibility for inquiring into the cause of suspension and for rendering judgment on it. The punishment available to the mayor, if the charges are sustained, includes suspension, reduction in rank or removal from the department.

If the punishment is a suspension of more than three days, reduction in rank or removal, the officer has five days within which to appeal to the village's legislative authority. The legislative authority must hear the appeal at its next regularly scheduled meeting, and the appellant may appear in person and by counsel at the hearing. The appellant may also examine all witnesses and answer all charges against him.

At the conclusion of the hearing, the legislative authority may dismiss the charges, uphold the mayor's judgment, or modify the judgment to one of suspension for not more than sixty days, reduction in rank, or removal from the department. Action by the legislative authority which removes or sus-

pends that appellant must be done by an affirmative vote of at least two-thirds of the members elected to it.

On its face, R.C. 737.19(B) bears a strong resemblance to the police and fire department civil service appeal provisions found at R.C. 124.34.[1] Accordingly, we believe it is appropriate to analogize to the procedure used by a city when it engages in an R.C. 124.34 exercise.

The Ohio Supreme Court, in *Cupps v. Toledo* (1961), 172 Ohio St. 536, 18 O.O.2d 82, 179 N.E.2d 70, clarified the burdens of proof borne by the appointing authority in an R.C. 143.27 exercise (now renumbered R.C. 124.34). Relying on the "truism that 'he who alleges must prove,' " *id.* at 539, 18 O.O.2d at 84, 179 N.E.2d at 72–73, the court established that the appointing authority bore the burden of proof of establishing that the police officer's conduct warranted discipline. *Id.* at paragraph one of the syllabus. As the appeal provided for from the civil service commission was *de novo*, the city bore the burden of proof in common pleas court. *Id.* at paragraph two of the syllabus. The burden in both of these exercises is a preponderance of the evidence. *Id.* at paragraphs one and two of the syllabus.

These standards require the trial court to weigh the evidence in the record (and such additional evidence as it, in its discretion, may admit) to determine if appellant's removal was proper pursuant to the reasons enumerated in R.C. 737.19(B).

This approach is also consistent with the approach used by the first appellate district in *Andrews v. Cleves* (Oct. 21, 1981), Hamilton App. No. C–800692, unreported, 1981 WL 10057.

Accordingly, this case must be reversed and remanded to the trial court for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

FORD, P.J., and JOSEPH E. MAHONEY, J., concur.

---

1. For example, R.C. 124.34 lists grounds for suspension, removal or reduction in rank as including "incompetency, inefficiency, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, * * * any other failure of good behavior, or any other acts of misfeasance, malfeasance or nonfeasance in office."

 Moreover, the role of the "appointing authority" (which is frequently a city's mayor) is similar to the role the village marshal and village mayor play in an R.C. 737.19(B) appeal. The analogy continues with the city's civil service commission serving in the quasi-judicial capacity which the village's legislative authority fulfills in an R.C. 737.19(B) appeal.