OPINION
This appeal emanates from a trial court judgment finding that Appellee complied with the procedural and substantive provisions of R.C. § 737.19 in dismissing Appellant, Gary Stephen, from his employment as a police officer with the Village of Barnesville. For the following reasons, this Court affirms the judgment of the Belmont County Court of Common Pleas.
According to Appellant, Barnesville police chief Christopher Ditto suspended him from the police department effective September 5, 1995 after the chief investigated allegations that Appellant had engaged in sexual intercourse at a park with Kristina Bailey, a twenty seven year old developmentally handicapped woman. (Appellant's Br., p. 5). On September 8, 1995, Mayor Thomas Michelli notified Appellant that he was discharged from employment as a Barnesville police officer pursuant to R.C. § 737.19(B) because he had engaged in, "sexual misconduct with an individual mentally incompetent." While this notification is absent from the record before this Court, Appellant does not challenge improper or insufficient notification and both parties agree to the language used in the notice. (Appellant's Br., p. 3; Appellee's Br., p. 7).
Appellant timely requested and was provided a hearing on his dismissal before the village council pursuant to R.C. § 737. 19 (B). At the hearing, the parties stipulated that the evidence and witness testimony would be presented in executive session of council and that subsequent events, including deliberations and the vote, would occur in open session. (Tr. p. 3).
At the hearing held before village council on September 18, 1995, Kristina Bailey testified, as well as her mother Janice Hill; Police Chief Christopher Ditto; Tina Greenwood, the pool manager at the park where the alleged sexual contact occurred; and school psychologist and professional counselor Mary Barker who had tested Ms. Bailey's mental and developmental abilities several times while Ms. Bailey was in high school. Appellant cross-examined these witnesses through his counsel and also presented psychologist Gregory Scalzi as his only witness.
Immediately following the hearing on September 18, 1995, the village council issued the following written conclusions of fact:
 "1. That Kristina Bailey's ability to consent to sexual contact is impaired by her mental condition and that she is not competent to consent to sexual contact.
 "2. That Officer Gary Stephen had sexual relations with Kristina Bailey on several occasions.
 "3. That Officer Stephen violated his public trust as a police officer when he had sexual relations with Kristina Bailey.
 "4. That Mayor Michelli's dismissal of Officer Stephen is warranted by the evidence and is therefore affirmed."
On September 28, 1995, Appellant appealed this decision to the Belmont County Court of Common Pleas. On May 31, 1996, Appellant filed a motion to add Ms. Bailey as a party to the case and filed a motion for an examination of Ms. Bailey to determine her impairment. The court held a status conference and on August 20, 1996 filed a judgment entry overruling Appellant's motions. The court also ordered Appellee to file a brief addressing the evidence that the court should consider on appeal in addition to the transcript of the council hearing. Appellant was ordered to file a responsive brief.
On September 4, 1996, Appellee filed a brief asserting that R.C. § 2506.03 allows the trial court to consider only the transcript of the village council hearing because none of the statute's listed exceptions applied and Appellant was afforded the right to present evidence and cross examine witnesses at the council hearing. Appellant filed a response contending that the court should hold a rehearing or a new trial on the matter pursuant to R.C. § 2505.01 (A) (3) and Heatwall v. BostonHeights (1990), 68 Ohio App.3d 96.
On November 27, 1996, the trial court agreed with Appellee that it was confined to review of the transcript. The court directed the parties to file trial briefs and they complied.
On February 3, 1997, the court issued findings of fact and conclusions of law on the matter. The court set forth the findings of council at hearing and the testimony that it found credible and relevant including testimony from Ms. Bailey, her mother, and psychologists Mary Barker and Gregory Scalzi. The court affirmed council's dismissal of Appellant from employment and found that council acted in accord with the provisions of R.C. § 737.19. On February 12, 1997, the court journalized this decision.
On March 3, 1997, Appellant filed a notice of appeal of the trial court's judgment. On December 1, 1997, this Court granted Appellee's motion to dismiss Appellant's appeal for lack of prosecution. However, on January 28, 1998, this Court reinstated the appeal in response to Appellant's application for reconsideration of the dismissal order.
In his first assignment of error, Appellant asserts:
 "THE TRIAL COURT ERRED IN AFFIRMING THE DISMISSAL OF OFFICER STEPHEN AS THE VILLAGE COUNCIL DID NOT MEET ITS BURDEN OF PROOF OF ESTABLISHING THAT APPELLANT'S CONDUCT WARRANTED DISCIPLINE UNDER R.C. 737.19(B)."
Appellant analogizes R.C. § 737.19(B) to the police and fire department civil service appeal provisions as found in R.C. § 124.34 and cites Shaffer v. West Farrnington (1992),82 Ohio App.3d 579 to assert that the civil service standards and burdens of proof apply to R.C. § 737.19(B) appeals. Applying these standards, Appellant argues that an essential element, Ms. Bailey's mental incompetence, was not proven by a preponderance of the evidence because the testimony of all of the witnesses established that Ms. Bailey was competent pursuant to R.C. § 2111.01, the guardian and conservatorship laws. Appellant also contends that he was denied due process because he was prevented from adequately preparing his defense. He claims that charge against him confined itself to conduct with a "mentally incompetent" person which, by definition, does not include a person impaired by a mental condition or unable to consent to sexual contact. Appellant argues that at most the evidence demonstrated that he engaged in consensual sexual acts with a person of impaired social judgment.
We agree that R.C. § 737.19 may properly be analogized to R.C. § 124.34. Shaffer, 82 Ohio App.3d 582. We also agree that while Appellant has the burden on an administrative appeal at the common pleas level to establish that the village authority committed procedural errors, the burden of proof is on the appointing authority to show by a preponderance of the evidence that the police officer's conduct warranted discipline. Id.,
citing Cupps v. Toledo (1961), 172 Ohio St. 536, paragraphs one and two of the syllabus.
We must initially address the standard of review to be used by this Court of Appeals. While the trial court's review is in essence de novo, this Court's review of Appellant's contention that there was insufficient evidence is set forth inBeyersdoerfer v. Shocket:
 "[w]hen addressing a sufficiency argument in a police dismissal, the court of appeals, just as in any other civil case, will reverse only when there is no competent, credible evidence going to all the essential elements of the claim."
(1994), 93 Ohio App.3d 647, 650, citing C.E. Morris Co. v. FoleyConstr. Co. (1978), 54 Ohio St.2d 279, syllabus (cited for the sufficiency standard in Chem. Bank off New York v. Neman [1990],52 Ohio St.3d 204, 207-208, 556 N.E.2d 490, 494); Cincinnati v.Chase (Dec. 23, 1992), Hamilton App. No. C-910808, unreported.Beyersdoerffer involves application of R.C. § 124.34, however, Appellant must concede its application to the case at bar when he advocates a direct analogy between R.C. § 737.19
(B) and R.C. § 124.34.
We recognize that village police officers are afforded a limited amount of job security pursuant to R.C. § 737.19
(B). By law, however, the village marshal has the exclusive authority to suspend police department employees, including police officers, "for incompetence, gross neglect of duty, gross immorality, habitual drunkenness, failure to obey orders given them by the proper authority, or for any other reasonable or justcause." R.C. § 737.19(B) (emphasis added). Upon notice of this suspension, the village mayor then reviews the reason for suspension and decides on disciplinary action, which can include removing the officer from the department. Id. The officer may appeal this removal to the village legislative authority. Id. The legislative authority must hear the officer's appeal at its next regularly scheduled meeting and the officer may appear at the hearing with counsel and may examine all witnesses and answer all charges against him. Id.
Upon conclusion of this hearing, the legislative authority has the ability to dismiss the charges, uphold the mayor's decision as to discipline, or modify the discipline. Id. A two-thirds vote is necessary to remove or suspend the officer. Id. When the legislative authority upholds a decision to remove or orders removal from the department, the officer may appeal that decision on questions of law and/or fact to the court of common pleas. Id.
The court of common pleas undertakes a de novo review to determine the appeal. Shaffer, 82 Ohio App.3d, 582;Heatwall v. Boston Heights (1990), 68 Ohio App.3d 96. In conducting such a review, the trial court, "* * * must weigh the evidence in the record (and such additional evidence as it, in its discretion, may admit) to determine if appellant's removal was proper pursuant to the reasons enumerated in R.C. 737.19 (B)." Shaffer,82 Ohio App.3d at 586.
The trial court in the instant case detailed the testimony it found credible and relevant to determine that council's dismissal of Appellant was proper pursuant to R.C. § 737.19(B). The court looked to the testimony of Ms. Bailey's mother who indicated that Ms. Bailey functions at the level of an eleven year old and that she must help Ms. Bailey with daily decision-making, such as helping her decide what clothes to wear. (Tr. pp. 9, 16-17). The court also referred to the testimony of Ms. Bailey herself, who admitted that she had engaged in sexual relations with Appellant. (Tr. p. 28). The court detailed part of the testimony of school psychologist Mary Barker who testified that she had administered testing to Ms. Bailey in high school which revealed that Ms. Bailey had a severe learning disability and functioned at the level of a seven to eleven year old child. (Tr. p. 41). The court also discussed the testimony of Appellant's witness Gregory Scalzi, a school and clinical psychologist. Scalzi testified that Ms. Bailey had an I.Q. of 70, which was in the mild range of mental retardation. (Tr. p. 69)
From the findings of fact and testimony in the record, the trial court had competent, credible evidence before it to determine that council's dismissal was proper and that the charge was proven by a preponderance of the evidence pursuant to R.C. § 737.19(B). While the trial court mentioned in its findings of fact and conclusions of law that some of the evidence was "uncontradicted," this does not indicate that the trial court placed the burden of proof on Appellant to establish that his actions did not warrant discipline under R.C. § 737.19(B), but was merely a recitation of testimony presented at the council hearing.
Further, Appellant's argument that Kristina's mental incompetence was not proven in conformance with the definition set forth in R.C. § 2111.01 is misplaced. R.C. § 2111.01
(D) defines "incompetent" as:
 "any person who is so mentally impaired as a result of a mental or physical illness or disability, or mental retardation * * * that the person is incapable of taking proper care of the person's self or property or fails to provide for the person's family or other persons for whom the person is charged by law to provide, or any person confined to a correctional institution within this state."
This definition has no relevance to the instant case as the introductory line of R.C. § 2111.01 specifically states that the definitions set forth are, "[a]s used in Chapters 2101. to 2131. of the Revised Code." These chapters address guardianships and other completely unrelated matters. We cannot find from the record that the mayor, council and the trial court referred to a definition of "incompetent" in the sense that such a word applies to guardianship and conservatorship. As further proof of this, we have in the record the findings of fact by the village council, where at numbered paragraph 1 they clearly state that they are looking at Ms. Bailey's "competency" merely as it relates to her ability to consent to sexual intercourse.
Black's Law Dictionary states that "mental incompetency": is established where there is found to exist an essential privation of reasoning faculties, or when a person is incapable of understanding and acting with discretion in the ordinary affairs of life." (6th Ed. 1990): 986. Webster's Ninth New Collegiate Dictionary defines "incompetent" as "1: not legally qualified 2: inadequate to or unsuitable for a particular purpose 3a: lacking the qualities needed for effective action b: unable to function properly." (1990), 610.
Based upon these definitions, the record establishes Ms. Bailey's incompetence as intended and used in the matter at bar by at least a preponderance of the evidence. Ms. Bailey's mother testified that she attended classes for the developmentally handicapped while in high school and indicated that while her daughter can care for herself with regard to hygiene, she requires help with decision-making in the daily affairs of life, such as deciding what to wear. (Tr. pp. 9, 16-17). Ms. Hill also testified that she drives Ms. Bailey to work or her daughter walks because Ms. Bailey does not drive. (Tr. p. 18, 35). School psychologist Mary Barker testified that her last testing of Ms. Bailey in 1989 revealed that she was functioning at the level of a seven to an eleven year old child. (Tr. p. 41). Both Ms. Barker and Mr. Scalzi, Appellant's own psychologist, agreed that Ms. Bailey's IQ of 70 or social judgment most likely did not change over the subsequent years. (Tr. p. 42-43; 75). Ms. Barker further testified that Ms. Bailey has a very difficult time making decisions and is easily led in pressured situations but explained that Ms. Bailey is able to work at her part-time job in a hospital washing dishes without extreme difficulty because the people there know her capabilities and the environment is very structured and repetitive. (Tr. pp. 40-43). Mr. Scalzi testified that he would find Ms. Bailey competent from a legal standpoint within the framework of the guardianship laws. (Tr. p. 75). However, he testified that he did not dispute any of Ms. Barker's testimony and that upon his review of Ms. Bailey's records, she does have an impairment in social judgment which would include the decision to engage in sexual contact. (Tr. p. 78).
Appellant's contention that he was denied due process is also without merit as he was given notice of the charge against him by the police chief and the mayor. While the charge asserted that Appellant engaged in sexual misconduct with an individual who was mentally incompetent, again, it is not reasonable to believe nor is it born out in the record that the definition of mental incompetence contained within R.C. § 2111.01 (D) would apply to this case or was intended by the notice given Appellant. Appellant was afforded a hearing in front of council. He was represented by counsel and had an opportunity to cross examine all witnesses and to present witnesses of his own. He was also afforded an opportunity to appeal that decision to the trial court who engaged in a de novo review of the record. Had Appellant questioned the language in the charge, he could have requested a clarification. As it stands, Appellant is merely using the guardianship standard, a definition which by its own language is not relevant, to attempt to confuse the issue here. This attempt is unsuccessful.
In his second assignment of error, Appellant asserts:
 "THE TRIAL COURT ERRED IN ADMITTING HEARSAY EVIDENCE IN VIOLATION OF EVID.R.802 THEREBY PREJUDICING THE RIGHT OF APPELLANT TO RECEIVE A FAIR HEARING."
Appellant contends that during the testimony of Ms. Hill and police chief Christopher Ditto at the council hearing, his objections to alleged hearsay were erroneously overruled. He claims that the witnesses' responses did not fall into specific hearsay exceptions. Appellant contends that this prejudiced his right to a fair hearing and tainted the conclusions of the council. Appellant also contends that council's conclusion that he and Ms. Bailey engaged in sexual relations on "several occasions" was unfounded.
Appellant's second assignment of error is without merit. Proceedings held in accordance with R.C. § 737.19(B) have been labeled administrative in nature. Shaffer,82 Ohio App.3d at 585; Heatwall, 68 Ohio App.3d at 98. Appellant concedes that the rules of evidence in administrative proceedings can be relaxed, but states that while the hearsay rule can be relaxed in such proceedings, the court cannot exercise its discretion to consider hearsay evidence in an arbitrary manner. Haley v. Ohio StateDental Bd. (1982), 7 Ohio App.3d 1, 6. We agree with this statement. See Simon v. Lake Geauga Printing Co. (1982), 69 Ohio St.2d 41,44; Haley, 7 Ohio App.3d at 6.
Appellant complains of the testimony of Ms. Bailey's mother, who explained that she received an anonymous phone call informing her that her daughter was having an affair with a married man. (Tr. p. 11). Ms. Hill testified that upon questioning by Chief Ditto, Ms. Bailey became upset and admitted that she had sexual contact with Appellant. (Tr. p. 14). Appellant also objected to Chief Ditto's testimony regarding his recollection of the content of conversations he had with other persons relevant to the investigation, including his discussion with Ms. Bailey regarding the sexual contact and the conversations between Ms. Bailey and Appellant before, during and after the incidents. (Tr. pp. 56-57). Appellant also complains of the chief's recollection of his conversation with the pool manager at the park who observed Ms. Bailey and Appellant together. (Tr. p. 58)
In the instant case, where relaxed evidentiary rules are permitted, we cannot say that the trial court acted arbitrarily, unreasonably or unconscionably in admitting the above testimony over Appellant's objections. First, some of the admitted testimony fits into exceptions to the hearsay rule. For instance, Ms. Hill's recollection of the anonymous phone call was not presented for the truth of the matter asserted, which made it admissible. Further, Ms. Hill's recollection of Ms. Bailey's admission to Chief Ditto that she had sexual contact with Appellant could also have been admitted as an excited utterance under Evid.R. 803 (2).
Second, and most importantly, the declarants of the statements that Appellant alleges were erroneously admitted testified in person at the hearing. Ms. Bailey testified before council that she had sexual contact with Appellant at least four times and that she engaged in these acts to make Appellant happy. (Tr. p. 29). The pool manager also testified before council as to her observations of Ms. Bailey and Appellant at the park. (Tr. pp. 50-54). Thus, the limitations on the guarantees of trustworthiness were diminished by the declarant's presence and testimony and Appellant had the opportunity to cross examine these witnesses.
Appellant also engages in yet another irrelevant argument in semantics in asserting that council's conclusion that he engaged in sexual relations with Ms. Bailey on "several occasions" was unfounded as "several occasions" means occasions in addition to the one meeting in the park Appellant acknowledges. Based upon Ms. Bailey's testimony that she had engaged in sexual contact four times with Appellant (Tr. p. 28) and with or without the alleged "hearsay" evidence, the trial court had before it competent credible evidence to uphold council's conclusion that Appellant had engaged in sexual contact "on several occasions" with Ms. Bailey. This was a credibility issue best left to the factfinder. Appellant's second assignment of error is therefore without merit.
In his final assignment of error, Appellant contends:
 "THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION IN SUPPORT OF A DE NOVO HEARING BY FINDING THAT SAID APPEAL WAS CONFINED TO THE TRANSCRIPT OF THE HEARING."
Appellant asserts that the common pleas court erroneously denied him a de novo hearing because it confined itself to the transcript of the council hearing on appeal. Appellant again analogizes R.C. § 737.19(B) to R.C. § 124.34 and asserts that a trial de novo was required where the court considers the evidence anew and independently examines the record. Appellant implies that a de novo review entitles him to an entirely new trial and an opportunity to present additional evidence in front of the common pleas court.
Appellant's contention is misplaced. R.C. § 737.19(B) authorizes an appeal to the court of common pleas on questions of law and fact. This Court has recently held that an R.C. §124.34 appeal from a municipal civil service commission is governed by R.C. Chapters 2505 and 2506. Guy v. City offSteubenville (Jan. 15, 1998), Jefferson App. No. 97-JE-22, unreported, citing Jacobs v. Marion Civil Service Commission
(1985), 27 Ohio App.3d 194, 195 and Lewis v. Parkinson (1981),1 Ohio App.3d 22, syllabus. R.C. 2505 provides the general procedure for appeals. R.C. § 2505.01 (A) (3) defines an, "appeal on questions of law and fact" as a, "* * * rehearing and retrial of a cause upon the law and the facts." R.C. §2506.01 goes on to state that all orders or decisions of any officer, board or commission of any political subdivision is reviewed by the court of common pleas pursuant to Chapter § 2505 except as modified by Chapter § 2506. R.C. § 2506.03
states that:
 "(A) The hearing of such appeal shall proceed as in the trial of a civil action, but the court shall be confined to the transcript as filed pursuant to section 2506.02 of the Revised Code unless it appears, on the face of that transcript or by affidavit filed by the appellant, that one of the following applies:
 "(1) The transcript does not contain a report of all evidence admitted or proffered by the appellant;
 "(2) The appellant was not permitted to appear and be heard in person, or by his attorney, in opposition to the final order, adjudication, or decision appealed from, and to do any of the following:
 "(a) Present his position, arguments, and contentions;
 "(b) Offer and examine witnesses and present evidence in support;
 "(c) Cross-examine witnesses purporting to refute his position, arguments, and contentions;
 "(d) Offer evidence to refute evidence and testimony offered in opposition to his position, arguments, and contentions;
 "(e) Proffer any such evidence into the record, if the admission of it is denied by the officer or body appealed from.
 "(3) The testimony adduced was not given under oath.
 "(4) The appellant was unable to present evidence by reason of a lack of the power of subpoena by the officer or body appealed from or the refusal, after request, of such officer or body to afford the appellant opportunity to use the power of subpoena when possessed by the officer or body;
 "(5) The officer or body failed to file with the transcript, conclusions of fact supporting the final order, adjudication, or decision appealed from;
 "If any circumstance described in divisions (A) (1) to (5) of this section applies, the court shall hear the appeal upon the transcript and such additional evidence as may be introduced by any party. At the hearing, any party may call, as if on cross-examination, any witness who previously gave testimony in opposition to such party."
Thus, to get a whole new hearing on appeal, Appellant must have filed an affidavit stating that one of the exceptions in §2506.03 applies. Otherwise, the trial court must be limited to a review of the record before it. The trial court was so limited in this matter by law.
Appellant cites Shaffer v. West Farmington (1992), 82 Ohio App.3d 579,585 to state that the appellate procedure of R.C. § 737.19(B) can be analogized to R.C. § 124.34. Again, we agree with this analogy and the holding that at the common pleas level, the village shoulders the burden of showing that the discipline of Appellant was warranted. Notwithstanding, the Shaffer court negates Appellant's contention that he is entitled to a new hearing with an opportunity to present additional evidence when it states:
 "* * * the village bears the burden, in the common pleas court, of establishing — on the evidence in the record and such additional evidence as the court, in its discretion, admits — that appellant's conduct warranted the discipline imposed upon him." Id. at 586 [emphasis added].
 "These standards require the trial court to weigh the evidence in the record (and such additional evidence as it, in its discretion, may admit) to determine if appellant's removal was proper pursuant to the reasons enumerated in R.C. 737.19 (B)." Id.
at 587 [emphasis added]
Beyersdoerfer v. Shocket also mandates a de novo review by the common pleas court but holds that:
 "In a trial de novo, the common pleas court independently examines the record as it appeared before the commission. In addition, the court, in its discretion, may supplement the record with additional evidence."
(1994), 93 Ohio App.3d 647, 650 citing Chupka v. Saunders (1986),28 Ohio St.3d 325, 327-328; Newsome v. Columbus Civ. Serv. Comm.
(1984), 20 Ohio App.3d 327.
Thus, while Appellant is in essence entitled to a de novo review at the common pleas level, such a review under R.C. § 737.19
(B) does not entitle him to an entirely new trial with an opportunity to present additional evidence. A trial court's review of the record below, with no presumption or weight being given to the administrative body's decision, is sufficient.
In Valloric v. Village off Shadyside (Sept. 30, 1992), Belmont App. No. 91-B-29, unreported, this Court upheld a trial court's affirmance of a village council dismissal of a police captain that was based upon a review of the transcript. We held that the trial court's decision would not be disturbed when it explicitly detailed in its findings that the charges against the appellant were supported by competent credible evidence and found that the disciplinary and termination procedures conformed with R.C. 737.Id. We also held that it was within the trial court's discretion to refuse to allow the appellant to introduce new evidence going to the motive behind the charges brought against him. Id. We found that the refusal was not error as the issue before the trial court was not the motivation behind the charges brought against the appellant, "* * * but rather, whether the decision to remove appellant was supported by the record." Id.
Similarly, we believe that the trial court acted appropriately in the instant case in examining the record and setting forth the relevant evidence that it found critical to affirm the council's decision to discharge Appellant and that this discharge was well-founded and in compliance with R.C. 737.
For all of the foregoing reasons, we find that the assignments of error advanced by Appellant are without merit. Accordingly, the trial court judgment is affirmed.
Donofrio, J., concurs.
Vukovich, J., concurs.
APPROVED:
 ____________________ CHERYL WAITE, JUDGE