OPINIONS OF THE SUPREME COURT OF OHIO

The full texts of the opinions of the Supreme Court of Ohio are being transmitted electronically beginning May 27, 1992, pursuant to a pilot project implemented by Chief Justice Thomas J. Moyer.

Please call any errors to the attention of the Reporter's Office of the Supreme Court of Ohio. Attention: Walter S. Kobalka, Reporter, or Deborah J. Whitten, Administrative Assistant. Tel.: (614) 466-4961; in Ohio 1-800-826-9010. Your comments on this pilot project are also welcome.

NOTE: Corrections may be made by the Supreme Court to the full texts of the opinions after they have been released electronically to the public. The reader is therefore advised to check the bound volumes of Ohio St.3d published by West Publishing Company for the final versions of these opinions. The advance sheets to Ohio St.3d will also contain the volume and page numbers where the opinions will be found in the bound volumes of the Ohio Official Reports.

In re Investigation of National Union Fire Insurance Company of Pittsburgh, Pennsylvania.
[Cite as In re Investigation of Natl. Union Fire Ins. Co. of Pittsburgh, Pa. (1993),      Ohio St.3d      .]
Casualty insurance -- R.C. 3937.03 requires insurers to file every manual of classifications, rules and rates, every rating plan, and every modification thereof with the Superintendent of Insurance.
(No. 91-2573 -- Submitted February 3, 1993 -- Decided April 7, 1993.)
Appeal from the Court of Appeals for Franklin County, No. 90AP-812.

National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union"), appellant herein, is an insurance company licensed to conduct business in the state of Ohio. On December 31, 1984, National Union issued a three-year, multi-peril policy insuring appellee city of Brook Park, Ohio. Premiums charged for the first year of coverage were $2.60 for bodily injury and $.85 for property damage per $1,000 of total city operating expenditures. Brook Park's total premium for the first policy year was $55,499.

During 1985, National Union recalculated the Brook Park policy premium. The recalculation resulted in a second-year premium of $334,603 based on rates of $5.612 for bodily injury and $1.84 for property damage per $1,000 of operating expenditures.

Following the recalculation, Brook Park requested that the Superintendent of Insurance ("the superintendent") investigate National Union's rates, policies, and practices of filing its rates with the appellee Ohio Department of Insurance ("the department"). On July 29, 1986, the superintendent issued a notice and order finding that National Union's filings failed to comply with R.C. Chapter 3937 and that there were reasonable grounds to justify a hearing to determine whether National Union violated various provisions of Ohio's insurance laws.

On September 15, 1986, a lengthy consent order was entered whereby National Union agreed to prospective compliance with Ohio insurance law. National Union further agreed that the

only issue remaining for adjudication was whether the general liability base rates used by National Union in rerating the Brook Park policy were consistent with filings made by or on behalf of National Union and, therefore, whether those filings were in compliance with R.C. Chapter 3937.

Following a hearing conducted November 3, 1986, a hearing officer concluded that National Union had violated R.C. 3937.03(A), 3937.03(H), and 3937.06.  The superintendent reviewed the hearing officer's recommendations and issued an order dated January 5, 1987.  The order adopted the hearing officer's findings, as corrected, and directed that National Union pay a $500 fine for each of the three violations.

Notwithstanding some procedural questions apparently caused in part by National Union's attempt to "appeal" the superintendent's decision to the Court of Common Pleas of Franklin County, a de novo judicial review of the ruling was conducted by the trial court.  In a decision entered June 26, 1990, the trial court approved and adopted the referee's recommendation that the order of the superintendent be affirmed and that summary judgment be granted in favor of the department and Brook Park.  National Union's motion to vacate the superintendent's order was denied by the trial court.

Upon appeal, the court of appeals affirmed the trial court, concluding that National Union's explanations were insufficient to justify its failure to comply with R.C. Chapter 3937.

The cause is now before this court pursuant to the allowance of a motion to certify the record.

Janik, Lester & Dunn, Steven G. Janik and Carrie A. Foliano; Lane, Alton & Horst and Rick E. Marsh, for appellant.
Lee I. Fisher, Attorney General, and Marc Kleiman, Assistant Attorney General; Benesch, Friedlander, Coplan & Aronoff, Orla E. Collier and James F. DeLeone, for appellee Department of Insurance.
McCarthy, Lebit, Crystal & Haiman Co., L.P.A., Mark B. Cohn, Charles P. Royer and Jeffrey A. Huth, for appellee city of Brook Park.

Alice Robie Resnick, J.  As set forth in R.C. Chapter 3937, insurance companies doing business in the state of Ohio are required to adhere to what is commonly referred to as a "file and use" system, i.e., a company's rates for general liability coverage must be "filed" with the Superintendent of Insurance and only then may such rates be "used" unless disapproved by the superintendent.  Prior to its amendment on January 5, 1988, R.C. 3937.03(A) provided, in relevant part:

"Every insurer shall file with the superintendent of insurance every *** manual of classifications, rules, and rates, every rating plan, and every modification ofany of them which it proposes to use."

An insurer may also satisfy its filing obligations if it is a member of, or a subscriber to, an approved rating organization which makes such filings, and by confirming that the superintendent may accept such filings on its behalf. R.C. 3937.03(B).  One such rating service, Insurance Services Office of Ohio ("ISO"), was utilized by National Union.

Effective January 15, 1980, ISO filed a new general liability classification structure and rating procedure applicable to governmental subdivisions with Ohio's superintendent.  The ISO document indicated that the filing created a classification structure based on an insured municipality's population multiplied by its total operating expenditures.  The last page of the document set forth specific rates by population classification for bodily injury and property damage.  The filing provided that for a municipality with a population of 25,000 to 50,000, such as Brook Park, the rating code was 91253.  The documented base rates for code 91253 were $2.60 for bodily injury and $.85 for property damage coverage.

As previously set forth, when National Union issued Brook Park's policy on December 31, 1984, the total premium charged the city of $55,499 matched the rates set forth in the 1980 ISO filing.  On the policy's first anniversary, December 31, 1985, without submitting any additional documentation to the superintendent, National Union increased the rates for bodily injury coverage from $2.60 to $5.612 and from $.85 to $1.84 for property damage coverage per $1,000 of operating expenditures, resulting in a total premium of $334,603.

Throughout the proceedings, National Union has contended that the change in rates it charged for the Brook Park policy should be exempted from the filing requirements of R.C. 3937.03.  National Union's argument is based on the theory that two of the three recognized types of base rates for liability coverage are, by their nature, flexible, and, therefore, filed rates may be modified simply on the basis of underwriting judgment.

First and foremost, we note that R.C. 3937.03 does not distinguish between the three types of rates commonly recognized in the insurance industry, i.e., manual rates, "guide (a)" rates, and "(a)" rates.1  Nevertheless, National Union argues that guide (a) rates merely include sufficient data to serve as a guide to establish a rate for a particular risk, but that such guide (a) rates do not possess sufficient historical experience to arrive at actuarial projections.2

Based on that interpretation, the question arises as to whether the rate set forth in National Union's manual of classifications, rules, and rates, which it filed with the Superintendent of Insurance, could be modified at the beginning of Brook Park's second policy year without filing such change with the superintendent.  National Union believes that an additional filing was not required and argues that "every modification thereof" does not include the filing of every rate.  This, however, is inconsistent with the structure of the statute that sets forth what must be filed with the superintendent: (1) every manual of classifications, rules, and rates; (2) every rating plan; and (3) every modification thereof.

The last page of the 1980 ISO filing is titled "Guide (a) Rates for Governmental Subdivisions."  However, ISO classified municipalities on the basis of population, and the document clearly set forth the rates charged by National Union during Brook Park's first policy year.  The increased premium rates charged for the second policy year were not filed by ISO or

National Union, nor was application made to deviate from the 1980 filing. Merely designating such rates as "guide (a)" does not alter the fact that the rates listed in 1980 appeared to be manual rates and, in the absence of a new filing, should have been followed. In other words, if National Union proposes to change the rates set forth in its manual, which it has filed, the modification to the manual of classifications, rules, and rates must be filed before it is used.

It is statutorily required that in order to be effective, any rate charged must be set forth in a manual of classifications, rules, and rates, or in a rating plan filed by or on behalf of the insured. R.C. 3937.03(A). Allowing National Union to assert that the nature of its filing implied that coverage rates would be determined by "underwriting judgment" undermines legislative intent and is simply not a filing as contemplated by R.C. 3937.03 (A).

Further, R.C. 3937.063 requires that any deviations from filings be similarly submitted to the superintendent. National Union's 1980 filing set forth rates for a municipality such as Brook Park, and Brook Park's first premium was charged in accordance with the listed rates. The premium for the second policy year was different from the documented rate, i.e., a modification. The fact that no new documentation was filed by National Union or ISO was a violation of R.C. 3937.03(A), 3937.03(H),4 and 3937.06.

National Union argues that it was excused from filing the rates by one or more publications issued by the department. National Union apparently interprets several of the department's bulletins as directing that neither "(a)" rates nor rates arrived at by application of filed and approved rating plans were required to be individually filed.

The department may suspend or modify its statutory filing requirements pursuant to R.C. 3937.03(F), which provides:

"The superintendent may, by written order, suspend or modify the requirement of filing as to any kind of insurance, subdivision, or combination thereof, or as to classes of risks, the rates for which cannot practicably be filed before they are used. Such orders shall be made known to insurers and rating organizations affected thereby. The superintendent may make such examination as he considers advisable to ascertain whether any rates affected by such order meet the standards set forth in division (D) of section 3937.02 of the Revised Code."

We conclude that the essence of National Union's argument is illogical and should be rejected. If by virtue of department bulletins issued prior to 1980 National Union was the recipient of a blanket rate-filing exclusion for risks such as Brook Park, it is impossible to understand why an ISO filing was made on National Union's behalf in 1980. Moreover, a policy was initially issued for Brook Park at rates set in accordance with the 1980 filing. It was only when National Union attempted to justify its modification of those rates that it looked to department bulletins for a filing exemption.

National Union also argues that it was not required to comply with the filing synopsis set forth in Bulletin 85-1. Bulletin 85-1 was issued March 18, 1985, and superseded Bulletin 16 (f.k.a. Bulletin 26), issued January 17, 1958. National Union argues that it is unaffected by the guidelines

set forth in Bulletin 85-1 because the bulletin was published after the effective date of the Brook Park policy.

National Union is correct in its contention that coverage under the Brook Park policy was written before the publication of Bulletin 85-1; however, on or about December 31, 1985, at the start of Brook Park's second policy year, National Union modified the premium rates ISO had filed on its behalf. What National Union fails to recognize is that the obligation to submit a modification emanates from R.C. 3937.03(A) and 3937.06, enacted in 1953, and not from Bulletin 85-1. The forms and guidelines set forth in Bulletin 85-1 are consistent with the requirements of R.C. 3937.03(A) and 3937.06, i.e., that every insurer file every manual of classifications, rules and rates, every rating plan, and every modification thereof, that it proposes to use.

Throughout these procedings, National Union has virtually ignored the 1980 ISO filing. National Union argues that what was filed in 1980 was a "Rating Plan" and not a "specific rate" as characterized by the department. The difference, according to National Union, is that "specific rates" cannot be modified without a new filing; however, a "Rating Plan" is, by its very nature, self-modifying, i.e., the rates will be changed following an actuarial and statistical analysis of the risk. National Union insists that by filing a "Rating Plan," it complied with the intent of the statute and put its insured and the department on notice that the rates set forth in the manual could change. National Union asserts that the Rating Plan explained that each insured should realize that the rates set forth may not be adequate to pay future losses and expenses and, therefore, the rates were merely proposed as guides.

By making this argument, National Union would have us believe that notwithstanding the fact that in 1980 it filed rates and in 1984 charged Brook Park its premium based on those rates, it was not required to file the new rates charged in 1985 because the nature of the risk had somehow become exempt from statutory filing requirements.

We find this argument to be without merit. Between 1980 and 1985, R.C. 3937.03(A) was not amended. The statute simply requires the filing of "every *** manual of classifications, rules, and rates, every rating plan, and every modification [thereof] * * *." (Emphasis added.) R.C. 3937.03(A). Further, R.C. 3937.06 requires an insurer to file with the Superintendent of Insurance any deviation from what has been filed by its rating organization. To find otherwise would contravene the plain, ordinary meaning of the statutes.

In its appeal to this court, National Union has also essentially set forth various due process arguments. First, National Union contends that the department exceeded its powers by attempting to legislate through the adjudicative process. National Union asserts that the department's goal was to rewrite R.C. 3937.03(A) in order to justify its finding that violations had occurred.

As previously set forth, our analysis indicates that National Union violated the law. We further find that the department did not use its adjudicative powers as a means to modify or rewrite the law. The department looked at the law as written, analyzed the evidence presented by all parties, and

determined that National Union had failed to comply with statutorily mandated filing requirements.

National Union asserts that its due process rights were violated by the department's failure to produce certain documents prior to the administrative hearing. While we do not encourage such a course of conduct by the department, we cannot find that National Union has demonstrated how it was prejudiced by such omission. A complete trial de novo was afforded National Union before the common pleas court. The relevant bulletins were available to the common pleas court and the court exercised its judgment independently of the department; therefore, prejudice against National Union cannot be established.

In its final due process argument, National Union asserts that Superintendent George Fabe was biased in his investigation and prosecution of National Union. National Union asserts that Fabe carried on ex parte conversations with the special counsel retained to prosecute National Union and that Fabe appointed the hearing officer who ultimately recommended sanctions against National Union.

By their very nature, the Ohio insurance laws, by which National Union has elected to be governed, anticipate that both investigative and adjudicative functions will be undertaken by the superintendent. The exercise of such functions by a board or an administrative officer does not violate a governed entity's right to due process of law.

Although Fabe directed an investigation of National Union, he did not actively participate in the base-rate hearing. Further, the hearing officer appointed by Fabe allowed both National Union and the department to present their cases prior to setting forth his recommendations. Fabe then merged his findings into those of the hearing officer prior to concluding that National Union violated the Ohio insurance laws. Under these facts and circumstances we find that National Union failedto meet its burden of proof with respect to the partiality of Fabe's conduct.

National Union alleges that as a result of Fabe's ex parte communications with special counsel retained to prosecute National Union, Fabe was unfairly biased against National Union. Incumbent upon National Union was the burden to overcome the presumption of honesty and integrity afforded those serving as adjudicators. Withrow v. Larkin (1975), 421 U.S. 35, 47, 95 S. Ct. 1456, 43 L.Ed.2d 712. In the absence of such proof and taking the administrative process as a whole, we are unable to agree with National Union that such ex parte communications, standing alone, violated its right to due process.

Moreover, National Union was afforded a de novo judicial review pursuant to R.C. 3937.15.5 Such proceedings were conducted in an atmosphere removed from the administrative process. A referee and a trial judge evaluated the evidence presented by all parties, and the court concluded that National Union had not complied with the filing requirements.

As set forth above, we find that National Union was not in any way excused from compliance with Ohio's rate-filing statutes and was, therefore, required to file the modified rates it planned to charge Brook Park prior to their

implementation.  Accordingly, the judgment of the court of appeals is affirmed.

Judgment affirmed.

Moyer, C.J., A.W. Sweeney, Douglas, Wright, F.E. Sweeney and Pfeifer, JJ., concur.

FOOTNOTES:

1    Our opinion is based in part upon an analysis of the aforementioned types of rates; however, while we acknowledge that the insurance industry has embraced the use of such rates, we have not adopted the general concept nor are we making such rates a judicially recognized feature of Ohio insurance law.

2    The other flexible rate, according to National Union, is an "(a) rate" which is established by underwriters due to the lack of historical experience that would permit the use of actuarial projections.  The third rate is "manual."  Such manual rate is set forth for a classification of risk that is expressed in a set dollar figure as determined by historical experience permitting the use of actual projections.

3    R.C. 3937.06 provides, in relevant part:

"Every member or subscriber to a rating organization shall adhere to the filings made on its behalf by such organization except that any such insurer may file with the superintendent of insurance a uniform percentage decrease or increase to be applied to the premiums produced by the rating system so filed for a kind of insurance for a class of insurance which is found by the superintendent to be a proper rating unit for the application of such uniform percentage decrease or increase, or for a subdivision of a kind of insurance comprised of a group of manual classifications which is treated as a separate unit for rate making purposes, or for which separate expense provisions are applicable.

"When such deviation is filed, it shall become effective immediately and shall be demmed to comply with sections 3937.01 to 3937.17, inclusive, of the Revised Code, unless disapproved by the superintendent as provided in section 3937.04 of the Revised Code. * * *"

4    Former R.C. 3937.03(H) provided:

"No insurer shall make or issue a contract or policy except in accordance with filings which are in effect for said insurer as provided in sections 3937.01 to 3937.17, inclusive, of the Revised Code."

5    R.C. Chapter 3937 specifically enumerates the review process that must be followed.  R.C. 119.12 is not applicable to this case because a right of appeal does not follow from the decision of an administrative board except as provided by statute.  Cleveland City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision (1973), 34 Ohio St.2d 231, 233, 63 O.O.2d 380, 381, 298 N.E.2d 125, 126.