OPINION
{¶ 1} Plaintiffs-appellants, Jeffrey L. Kinsey and Andrea R. Kinsey, personally and as mother and legal guardian of Alexia L. Kinsey (collectively, "appellants"), appeal from the judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendant-appellee, National Indemnity Company ("NIC"), on appellants' claims regarding their entitlement to underinsured motorist ("UIM") coverage under an insurance policy issued by NIC. For the following reasons, we affirm.
 {¶ 2} This action arises out of an automobile collision that occurred on December 28, 2000, in which appellants sustained personal injuries. The collision occurred when Kirk Stephens, operating a vehicle owned by Robert Elliot, went left of center and struck a moving van occupied by appellants and rented from Gender Rentals/American Mobile Leasing. At the time of the collision, Stephens and Elliot were insured under a personal auto policy issued by Erie Insurance Group ("Erie") with liability limits of $100,000 per person/$300,000 per accident. Erie tendered its $100,000 limit of liability, in resolution of claims arising from injuries to Jeffrey Kinsey.
 {¶ 3} Appellants initiated this action by filing a complaint in the Franklin County Court of Common Pleas on March 13, 2002, alleging claims against multiple defendants, including NIC. NIC insured American Mobile Leasing under a commercial business auto liability policy ("NIC policy"), effective December 3, 2000, through December 3, 2001. With respect to NIC, appellants asserted a claim for declaratory judgment regarding their entitlement to UIM coverage under the NIC policy, as well as claims for breach of contract and bad faith, arising out of NIC's refusal to pay UIM benefits. NIC timely answered appellants' complaint, denying coverage and liability.
 {¶ 4} It is undisputed that, as lessees, appellants qualified as insureds under the NIC policy and that the vehicle appellants occupied at the time of the collision was a scheduled vehicle under the NIC policy. According to its Business Auto Coverage Declarations ("declarations"), the NIC policy provided liability coverage up to a combined single limit ("CSL") of $100,000. However, from its inception, the NIC policy included endorsement M-3839, entitled "LEASING OR RENTAL CONCERNS Lessor O-wner Increased Limits of Liability[,]" which provides that the liability limit under the Business Auto Coverage Form is increased to "$500,000 Combined Single Limit of Liability, as respects the named insured (Lessor-Owner)." Thus, the NIC policy provided one CSL of liability ($500,000) to American Mobile Leasing, the lessor-owner, and a different CSL of liability ($100,000) to other insureds, including lessees, such as appellants.
 {¶ 5} The NIC policy declarations indicate that the policy provides uninsured motorists ("UM") and UIM coverage up to a CSL of $25,000. As part of the NIC policy, endorsement M-2918d Ohio (3/95), captioned "OHIO — NOTICE Regarding Uninsured Motorists Insurance Including Underinsured Motorists Insurance" ("endorsement M2-918d") purports to indicate American Mobile Leasing's selection of UM/UIM Bodily Injury Insurance at a "[s]ingle limit of $25,000 per accident combined single limit[,]" as reflected in the declarations.
 {¶ 6} On May 28, 2004, NIC filed a motion for summary judgment, arguing that appellants were not entitled to UM/UIM coverage under the NIC policy because appellants could not establish that their injuries resulted from the negligence of an uninsured or underinsured motorist. Appellants opposed NIC's motion and, on June 1, 2004, filed a motion for partial summary judgment with respect to their claims against NIC. Appellants argued that American Mobile Leasing's reduction of UM/UIM coverage to $25,000 was invalid, that UM/UIM coverage arose by operation of law under the NIC policy in the amount of $500,000, and that the tortfeasor was an underinsured motorist.
 {¶ 7} On November 7, 2005, the trial court issued a decision and entry granting NIC's motion for summary judgment and denying appellants' motion for partial summary judgment. The trial court agreed with appellants' argument that the purported reduction of UM/UIM coverage to $25,000 was ineffective, pursuant to Linko v.Indemn. Ins. Co. of N. Am. (2000), 90 Ohio St.3d 445, because endorsement M-2918d did not meet the requirements for a valid offer of UM/UIM coverage. Accordingly, the trial court concluded that UM/UIM coverage in the NIC policy arose by operation of law. Nevertheless, the trial court rejected appellants' contention that they were entitled to $500,000 of UM/UIM coverage and, instead, concluded that appellants' UM/UIM coverage arose in the amount of $100,000, equivalent to appellants' liability coverage under the NIC policy. Because appellants' UM/UIM coverage under the NIC policy did not exceed the liability coverage available under the tortfeasor's insurance policy, the trial court determined that the tortfeasor was not an underinsured motorist and that appellants were not entitled to recover against NIC.
 {¶ 8} On January 7, 2006, the trial court issued an entry making its November 7, 2005 decision and entry a final appealable order. Appellants filed a timely notice of appeal and assert the following single assignment of error:
THE TRIAL COURT ERRED IN DETERMINING A COVERAGE LIMITATION WITHIN DEFENDANT NATIONAL INDEMNITY COMPANY'S POLICY OF INSURANCE WAS VALID.
Although appellants phrase their assignment of error in terms of the validity of a coverage limitation, appellants essentially argue that the trial court erroneously concluded that the limit of UM/UIM coverage available to appellants by operation of law under the NIC policy is $100,000.
 {¶ 9} Appellate review of summary judgments is de novo. Koosv. Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588, citing Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 711. When an appellate court reviews a trial court's disposition of a summary judgment motion, it applies the same standard as the trial court and conducts an independent review, without deference to the trial court's determination. Maust v.Bank One Columbus, N.A. (1992), 83 Ohio App.3d 103, 107; Brown
at 711. Summary judgment is appropriate only where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the non-moving party. Harless v.Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66.
 {¶ 10} The statutory law in effect at an insurance policy's inception governs interpretation of the policy. See Ross v.Farmers Ins. Group of Cos. (1998), 82 Ohio St.3d 281, 287-288. The S.B. 267 version of R.C. 3937.18, effective September 21, 2000, applies to UM/UIM coverage under the NIC policy and provides, in part:
(A) No automobile liability or motor vehicle liability policy of insurance * * * shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following coverages are offered to persons insured under the policy due to bodily injury or death suffered by such insureds:
(1) Uninsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage * * *
(2) Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for insureds thereunder for bodily injury, sickness, or disease, including death, suffered by any person insured under the policy, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage. Underinsured motorist coverage is not and shall not be excess insurance to other applicable liability coverages, and shall be provided only to afford the insured an amount of protection not greater than that which would be available under the insured's uninsured motorist coverage if the person or persons liable were uninsured at the time of the accident. The policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured.
Thus, under the applicable version of R.C. 3937.18(A), an insurer was required to offer UM/UIM coverage "in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage[.]" Absent an offer of such coverage, UM/UIM coverage arises by operation of law in an amount equivalent to the liability coverage. Allen v. CNA, Franklin App. No. 02AP-1249, 2003-Ohio-4689, at ¶ 11, citing Gyori v. JohnstonCoca-Cola Bottling Group, Inc. (1996), 76 Ohio St.3d 565, and R.C. 3937.18(A).
 {¶ 11} Under the S.B. 267 version of R.C. 3937.18(C), an insured was entitled to reject UM/UIM coverage or elect such coverage in an amount less than the policy's liability limit, but not less than the statutory limits for financial responsibility required by R.C. 4509.20. However, before an insured may validly reject or reduce UM/UIM coverage, the insurer must extend a meaningful offer of such coverage, and that offer must contain a brief description of the coverage, the premium for that coverage, and an express statement of the UM/UIM coverage limits. Linko
at 449. Without a meaningful offer, there cannot be a valid rejection and UM/UIM coverage arises by operation of law.Edstrom v. Universal Underwriters Ins. Co., Franklin App. No. 01AP-1009, 2002-Ohio-3334, at ¶ 23. Here, the trial court concluded that endorsement M-2918d did not constitute a meaningful offer of UM/UIM coverage because it lacked information regarding the premium for such coverage and that, consequently, American Mobile Leasing's election of UM/UIM coverage in the reduced amount of $25,000 was invalid. Therefore, the trial court concluded that UM/UIM coverage arose by operation of law in the amount of the NIC policy's liability coverage.
 {¶ 12} The parties have not appealed the trial court's determination that NIC's offer of UM/UIM coverage and American Mobile Leasing's reduction of such coverage were invalid. The parties' disagreement concerns the limit of UM/UIM coverage imposed by operation of law and, specifically, whether the trial court correctly determined that the limit of UM/UIM coverage available to appellants is $100,000. Appellants argue that the trial court erred in concluding that UM/UIM coverage arose in differing amounts, equivalent to the NIC policy's differing limits of liability coverage, depending on the identity of the insured. Appellants contend that, because the NIC policy extended liability coverage to American Mobile Leasing up to an increased limit of $500,000, UM/UIM coverage for all insureds arises in the amount of $500,000.
 {¶ 13} Appellants offer two arguments in support of their position that the trial court erred in determining that the UM/UIM coverage available to appellants by operation of law is limited to $100,000. While not disputing the validity of the NIC policy's separate liability limits for the lessor and lessees, appellants first argue that NIC was not authorized to sell UM/UIM coverage with different limits for different classes of insureds because it had not obtained authorization from the Ohio Department of Insurance ("ODI") to do so. Secondly, appellants argue that endorsement M-2918d only offers UM/UIM coverage with a single CSL applicable to both lessor and lessees. For these reasons, appellants argue that UM/UIM coverage may arise by operation of law only in a single CSL applicable to both lessor and lessees and in the amount of the highest liability limit afforded under the NIC policy. We reject appellants' arguments.
 {¶ 14} In their first argument, appellants contend that UM/UIM coverage may not arise by operation of law with different limits for the lessor and lessees because NIC had not obtained authorization from ODI to issue UM/UIM coverage with different limits for different classes of insureds. Under R.C. Chapter 3937, insurance companies doing business in Ohio are required to adhere to a "file and use" system, under which "[an insurance] company's rates for general liability coverage must by `filed' with the Superintendent of Insurance and only then may such rates be `used' unless disapproved by the superintendent." In reInvestigation of Natl. Union Fire Ins. Co. of Pittsburgh, Pa.
(1993), 66 Ohio St.3d 81, 82. As part of the "file and use" rules, R.C. 3937.03(A) requires insurers to file with the superintendent "every form of a policy, endorsement, rider, manual of classifications, rules, and rates, every rating plan, and every modification of any of them which it proposes to use * * * [stating] any proposed effective date and [indicating] the character and extent of the coverage contemplated." Under R.C.3937.03(H), "[n]o insurer shall make or issue a contract or policy except in accordance with filings which are in effect for said insurer as provided in sections 3937.01 to 3937.17 of the Revised Code."
 {¶ 15} Appellants argue that NIC failed to file with the superintendent a form or endorsement providing for different UM/UIM limits for different classes of insureds and that, therefore, NIC was not authorized to issue such coverage. As a result, appellants contend that UM/UIM coverage may not arise by operation of law under the NIC policy with different limits for different classes of insureds.
 {¶ 16} The Ninth District Court of Appeals addressed the legislative intent behind the "file and use" system in GoodyearTire Rubber Co. v. Aetna Cas. and Sur. Co. (July 12, 1995), Summit App. No. 16993:
The intent of the legislature in enacting the requirement that insurers file rating plans, which indicate the character and extent of coverage, see R.C. 3937.03, was to enable the superintendent of insurance to determine whether rates proposed to be charged are "excessive, inadequate, or unfairly discriminatory" in light of certain, specified factors relating to risk experience. R.C. 3937.02(D); see, also, R.C. 3937.04; R.C. 3937.17. * * *
(Emphasis sic.) Such intent to control rates is evident from R.C. 3937.17, which instructs that R.C. 3937.01 through 3937.17
are to be "liberally interpreted to the end that insurancerates shall not be excessive, inadequate, or unfairly discriminatory[.]" (Emphasis added.) The purpose of R.C.3937.03(H) is not to enable insureds to make decisions regarding the meaning or extent of coverage available. Goodyear.
 {¶ 17} Nothing in R.C. Chapter 3937 requires that coverage arising by operation of law conform to the insurer's ODI filings. Nor does an insurer's non-compliance with the filing requirements of R.C. 3937.03 render coverage that differs from the insurer's ODI filings void. In GenCorp Inc. v. American Internatl.Underwriters (C.A.6, 1999), 178 F.3d 804, 831-832, the Sixth Circuit addressed the effect of an insurer's non-compliance with R.C. 3937.03(A). There, the plaintiff-appellant argued that endorsements incorporated into insurance policies as the result of a prior settlement agreement were void because the superintendent of insurance had not approved an exclusion contained therein. The Sixth Circuit rejected the plaintiff-appellant's argument, re-stating that the court's prior holding, in reference to the predecessor of R.C. 3937.03, that the "Ohio Legislature intended merely to fine insurers for failing to file a policy endorsement" and that, "had [the] Legislature intended to void such contracts it could have easily said so in express words[.]" Id., citing McCullough Transfer Co.v. Virginia Sur. Co. (C.A.6, 1954), 213 F.2d 440, 442-443. Contrary to appellants' argument, the absence of a filing providing for UM/UIM coverage with different limits for different insureds neither voids such coverage nor precludes the imposition of such coverage by operation of law where, as here, the insurer failed to make a valid offer of UM/UIM coverage under Linko.
 {¶ 18} In their second argument, appellants argue that there is no language in the NIC policy or in endorsement M-2918d to suggest that UM/UIM coverage was available in different limits for the lessor and lessees. Rather, appellants contend that endorsement M-2918d and the NIC policy's UM/UIM endorsement identify the UM/UIM coverage as a CSL coverage applicable to all insureds. Thus, they argue that UM/UIM coverage may only arise in a single CSL limit applicable to all insureds and equal to the $500,000 liability coverage afforded to American Mobile Leasing. NIC does not dispute that UM/UIM coverage arises as a CSL coverage, as opposed to a coverage with separate per person/per accident limits. However, NIC contends that such coverage must arise in the amount of $100,000 CSL for lessees and in the higher amount of $500,000 CSL for the lessor-owner, to equal the liability coverage provided to lessees and the lessor-owner, respectively.
 {¶ 19} Appellants correctly note that neither endorsement M-2918d nor the NIC policy's UM/UIM coverage endorsement expressly states that UM/UIM coverage is available in different amounts for lessees and the lessor, but the absence of such language does not define the UM/UIM coverage imposed by operation of law. Appellants argued and the trial court held that NIC failed to extend a valid offer of UM/UIM coverage under Linko.
Otherwise, UM/UIM coverage would have been limited to $25,000, the reduced limit American Mobile Leasing purported to select in endorsement M-2918d. It is simply because endorsement M-2918d did not constitute a valid offer of UM/UIM coverage that such coverage arises by operation of law. Whether it purported to offer UM/UIM coverage with one limit applicable to all insureds or with separate limits for lessees and the lessor, endorsement M-2918d did not validly offer any UM/UIM coverage. Therefore, the terms contained therein do not govern coverage imposed by operation of law. Moreover, even if we were to consider endorsement M2-918d in determining the scope of UM/UIM coverage imposed by operation of law, the endorsement specifically states that the insured "may select limits equal to or less than the Bodily Injury Liability Limits in your policy[.]" This language clearly contemplates the policy containing multiple liability limits and undercuts appellants' argument that UM/UIM coverage may only arise subject to a single limit for all insureds.
 {¶ 20} Even in cases where courts have looked to provisions in a policy's UM/UIM coverage endorsement despite determining that, under Linko, an insured's rejection or reduction of UM/UIM coverage was invalid, courts have not looked to the endorsement language for guidance on the policy limits to be imposed by operation of law. See Allen (utilizing endorsement's definition of "insured"); Ross v. Clark, Franklin App. No. 02AP-222, 2003-Ohio-4056 (noting a disagreement as to whether an existing UM/UIM endorsement governs who is an insured for UM/UIM purposes when such coverage arises by operation of law); Hannahv. Liberty Mut. Ins. Co., Muskingum App. No. CT2004-0033,2005-Ohio-171 (applying UM/UIM endorsement provisions despite an invalid reduction but noting that the court must create the policy limits to be imposed by law). Because NIC did not validly offer UM/UIM coverage, neither endorsement M2-918d nor the UM/UIM coverage endorsement controls the amount of coverage that arises by operation of law.
 {¶ 21} Because Ohio law permits an insurer to issue a policy of insurance with split liability limits for different insureds, see West American Ins. Co. v. Maurer (1987),41 Ohio App.3d 279, UM/UIM coverage is imposed by operation of law with equal limits, consistent with the plain language of R.C. 3937.18(A). The NIC policy undisputedly provided liability coverage to appellants up to $100,000 CSL. Pursuant to R.C. 3937.18(A), NIC was required to offer UM/UIM coverage for appellants in an equal amount. Having failed to do so, that amount of coverage is imposed by operation of law. R.C. 3937.18(A) obligated NIC only to offer its insureds UM/UIM coverage in an amount equivalent to the liability coverage afforded to such insureds, and no greater amount of coverage may be imposed on the NIC policy by operation of law. Consequently, appellant's UM/UIM coverage under the NIC policy arose by operation of law in the amount of $100,000 CSL, equivalent to their liability coverage, and we reject appellants' argument that UM/UIM coverage for all insureds arose in an amount equivalent to the higher liability coverage afforded only to the lessor-owner under the NIC policy.
 {¶ 22} Because the amount of UM/UIM coverage available to appellants under the NIC policy did not exceed the amount of liability coverage available from the tortfeasor, the trial court did not err in granting NIC's motion for summary judgment and denying appellants' motion for partial summary judgment. Accordingly, we overrule appellants' assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Klatt, P.J., and Travis, J., concur.