In re Petition for Annexation to the City of Westerville of 162.631 Acres in the Township of Blendon.
Scherer et al., Appellants, *v.* Hahn, City Clerk, City of Westerville, et al., Appellees.

(Nos. 87AP-1070 and 87AP-1071—Decided September 27, 1988.)

*Metz & Bailey* and *Jeffrey D. Mackey,* for appellees agent for petitioners and the city of Westerville.

*Michael Miller,* prosecuting attorney, and *Jeffrey L. Glasgow,* for ap-

pellee Franklin County Board of Commissioners.

*Moots, Cope & Kizer Co., L.P.A., Elizabeth M. Stanton, Carol Ann Fey* and *Wanda L. Carter,* for appellants.

McCORMAC, J. Appellants appeal the affirmance by the Franklin County Court of Common Pleas of the decision of the Franklin County Board of Commissioners to allow the city of Westerville to annex approximately 162.631 acres of land in Blendon Township and the denial of appellants' petition for an injunction against the annexation.

Owners of real estate in the 162.631 acres adjacent to Westerville collected signatures of landowners in an annexation petition pursuant to R.C. 709.02 to 709.11. The Franklin County Board of Commissioners ("board") held a hearing on the annexation petition and unanimously agreed to allow Westerville to annex the territory. Prior to a vote of the Westerville City Council on the annexation application, appellant filed an R.C. Chapter 2506 appeal of the board's approval of the annexation application. Appellants also filed an injunction action under R.C. 709.07 to prevent Westerville from annexing the property.

The Franklin County Court of Common Pleas granted a preliminary injunction to stay any further annexation proceedings until the court decided whether the board's decision allowing the annexation was valid. Thereafter, the court affirmed the board's decision to allow Westerville to annex the territory, dissolved the preliminary injunction, and denied the petition for a permanent injunction against the annexation.

Appellants appeal these judgments and assert the following assignments of error:

"I. The court of common pleas erred in failing to apply the proper standard of review to two of appellants' claims.

"II. If the court of common pleas denied appellants' R.C. 2506.03 motion, then the court committed reversible error.

"III. The court of common pleas erred in finding that the proposed annexation was lawfully brought under R.C. 709.02-709.11.

"IV. The court of common pleas erred in failing to find the board's order invalid because it resulted from private deliberations in violation of R.C. 121.22 and 709.032.

"V. The court of common pleas erred in upholding the Board of Franklin County Commissioners' finding that R.C. 709.033 had been complied with."

Several landowners in Blendon Township approached Westerville about having their land annexed to Westerville and obtaining its water services. At the time, which was in the early 1980s, Westerville was not interested.

In 1985, Westerville changed its mind, contacted these three interested landowners and held a meeting. The city told the landowners that it was interested in providing them with water services, but that its policy was to annex property before servicing it. The city described the annexation process to the landowners, provided them with annexation petitions, an annexation map of the 162.631 acres, and a sheet explaining the cost of the water lines. Westerville suggested its attorney as the annexation agent and the landowners did not object to this designation.

These three landowners then circulated the annexation petition among the property owners in the area, handed out the annexation map, and the sheet on water-line cost. They needed the signatures of a majority of the sixty-three landowners in the area, *i.e.,* thirty-two signatures, on the petition. They obtained forty-two signa-

tures and presented the annexation petition to the board.

Pursuant to R.C. 709.031(B), Westerville passed Resolution No. 85-27, which set forth the services Westerville would provide to the area if Westerville annexed it.

On January 15, 1986, the board held a public hearing on the annexation petition to determine whether to allow Westerville to annex the area. At the hearing, three of the forty-two signatures were removed by mutual consent of all parties. Counsel for the opposition requested that fourteen other names be removed, but the board took no action on these names and postponed the decision until it could obtain its attorney's opinion of the validity of the contested signatures. On February 12, 1986, the board reconvened and stated that it had met in an executive session with its attorney staff and decided that two names should be deleted. Since the board found that the remaining thirty-seven signatures on the petition constituted a majority of the landowners in the area and that it was for the general good of the area to be annexed, it entered an order allowing the annexation, which order was later affirmed by the Franklin County Court of Common Pleas.

Appellants argue that the trial court erred in finding that the proposed annexation was lawfully brought under R.C. 709.02 to 709.11, by petition of the owners, because of Westerville's involvement in the annexation. Appellants further argue that the trial court also erred because it did not find that a private consultation between the board and its counsel was a violation of the Sunshine Law, R.C. 121.22. Lastly, appellants state that the trial court applied the wrong standard of review to these two issues.

Ohio statutes establish two procedures whereby an unincorporated territory may become annexed to a municipality. R.C. 709.02 to 709.11 provide the procedure whereby landowners of a territory can annex their property to a municipality. R.C. 709.13 to 709.18 establish a method for a municipality to annex territory through its own actions.

Appellants argue that these two methods are mutually exclusive and, hence, that the municipality cannot be involved in the landowners' annexation action. The plain meaning of R.C. 709.02 to 709.11 does not support this argument. R.C. 709.02 states that:

"The *owners* of real estate adjacent to a municipal corporation *may,* at their option, cause such territory to be annexed thereto, in the manner provided by sections 709.03 to 709.11 of the Revised Code. * * *" (Emphasis added.)

R.C. 709.03 to 709.11 do not provide that only landowners can be involved in this annexation process. Appellants cite case law which they claim supports this proposition. However, three of the cases they cite, *Perry Twp. Bd. of Trustees* v. *Cicchinelli* (1986), 35 Ohio App. 3d 173, 174-175, 520 N.E. 2d 235, 236-237; *Canton Twp. Bd. of Trustees* v. *Mallonn* (Aug. 3, 1987), Stark App. No. CA-7084, unreported; and *Genoa Twp. Trustees* v. *Hahn* (Oct. 9, 1987), Delaware App. No. 87-CA-11, unreported, all support the proposition that an owners' petition for annexation may be valid and proper even though the city aids the landowners.

The Ohio Attorney General in an advisory opinion, 1985 Ohio Atty. Gen. Ops. No. 85-034, 2-119, at 2-121, found that a municipal corporation may not retain private counsel in order to assist residents of adjacent townships in proceeding with an application for annexation under R.C. 709.02. The Attorney General extended this finding in 1986 Ohio Atty. Gen. Ops. No. 86-008, 2-33, at 2-36, another advisory opinion,

when it found that a municipality may not expend its funds, provide the assistance of its employees, or contract with others to assist the residents of an adjacent township interested in annexation under R.C. 709.02. The Attorney General reasoned that a municipality has no right to extraterritorial action because there is no statutory provision for such action and the "powers of home rule do not enable a municipal corporation to act beyond its borders and interfere with or control the electors in another political subdivision. * * *" 1985 Ohio Atty. Gen. Ops. 85-034, 2-119, at 2-121.

Home rule grants a city the power of local self-government, Section 3, Article XVIII of the Ohio Constitution.

However, the Home Rule Amendments do not restrict a city to involvement solely in its own territory and do not prevent a city from acting in its interest outside the city limits. It has been held that a municipality can be involved in actions that are necessary and will serve a public municipal interest. *State, ex rel. Gordon,* v. *Rhodes* (1951), 156 Ohio St. 81, 45 O.O. 93, 100 N.E. 2d 225. The interest of the receiving municipal corporation is no less than that of a losing township. See *In re Appeal of Bass Lake Community, Inc.* (1983), 5 Ohio St. 3d 141, 5 OBR 273, 449 N.E. 2d 771.

Recently, the Supreme Court stated that a city may provide, at its discretion, municipally owned public utilities outside its territory. *Fairway Manor, Inc.* v. *Summit Cty. Bd. of Commrs.* (1988), 36 Ohio St. 3d 85, 89, 521 N.E. 2d 818, 822-823.

By analogy, a municipality within its discretion may involve itself in extraterritorial activities, such as an owners' annexation petition, in order to ensure that the city may continue growing. The primary difference in the two petition methods is who signs the petition rather than that there may not be an interest or involvement in the procedure initiated by those who do not formally commence the proceeding. Hence, even if the procedures are mutually exclusive, it does not follow that the municipality which has an interest in its boundaries may not be involved in assisting landowners with their petition.

The court of common pleas did not err in finding that, even with Westerville's involvement, the proposed annexation was lawfully brought under R.C. 709.02 to 709.11.

Appellants' third assignment of error is overruled.

In appellants' fourth assignment of error, they argue that the board's order was invalid because it resulted from private deliberations in violation of R.C. 121.22, "the Sunshine Law," and R.C. 709.032.

R.C. 709.032 provides that the hearing before the board shall be public.

R.C. 121.22(C) provides, in pertinent part:

"All meetings of any public body are declared to be public meetings open to the public at all times. * * *"

A "public body" is defined to mean "any board, commission, committee, * * *." R.C. 121.22(B)(1). A "meeting" is defined as "any prearranged discussion of the public business of the public body by a majority of its members." R.C. 121.22(B)(2). The Sunshine Law enumerates narrowly drawn exceptions to the policy of open meetings of any public body in R.C. 121.22(G), subsections (1) through (6).

Appellants argue that the executive session that the board held with its attorney to determine which signatures on the petition were proper and which ones were not proper does not fall within the exceptions enumerated in R.C. 121.22(G).

In *Matheny* v. *Frontier Local Bd. of Edn.* (1980), 62 Ohio St. 2d 362, 16

O.O. 3d 411, 405 N.E. 2d 1041, the court found that the legislature's use of the term "meeting" in the Sunshine Law was intended to have a different meaning than the term "hearing" in former R.C. 121.22(G)(1). The term "hearing" was used to refer to situations where a formal hearing was statutorily mandated. Therefore, even though a public body must open all its meetings to the public, there is a category of gatherings, called "hearings," which do not have to be public.

Furthermore, an R.C. 709.032 annexation hearing is a quasi-judicial proceeding.

"Proceedings of administrative officers and agencies are not quasi-judicial where there is no requirement for notice, hearing and the opportunity for introduction of evidence." *M. J. Kelley Co.* v. *Cleveland* (1972), 32 Ohio St. 2d 150, 61 O.O. 2d 394, 290 N.E. 2d 562, paragraph two of the syllabus.

In the owners' petition annexation method, the board must provide notice, hearing, and an opportunity for introduction of evidence. R.C. 709.031 establishes a procedure for notice. R.C. 709.032 provides for a public hearing and offers an opportunity for any owner who signed the annexation petition to appear and testify. Therefore, applying *M. J. Kelley Co., supra,* the hearing provided in this annexation proceeding was a quasi-judicial hearing. As a formal hearing, statutorily mandated, the annexation hearing falls into the category of gatherings which are not meetings and, hence, does not fall under the Sunshine Law. The fact that the board was deciding a dispute between two outside groups adds force to the conclusion that the proceeding was quasi-judicial.

Appellants' fourth assignment of error is overruled.

In appellants' second assignment of error, they argue that, if the court of common pleas denied appellants' R.C. 2506.03 motion to hear additional evidence, then the court committed reversible error.

R.C. 2506.03 provides that in an appeal from an administrative decision the court shall admit additional evidence under certain circumstances.

Appellants first argue that the trial court granted their R.C. 2506.03 motion. They initially filed a motion to hear additional evidence pursuant to R.C. 2506.03. On February 11, 1987, the court denied this motion and, on February 20, appellants filed a motion for reconsideration. The court rendered a decision on this motion for reconsideration and ordered the parties to submit an entry "setting the matters for hearing instanter." The parties were unable to agree upon an entry and each submitted an entry and notice of hearing. Appellants' proffered entry expressly stated that appellants' R.C. 2506.03 motion had been granted. The court did not sign this entry but chose appellees' entry which simply "ordered a combined hearing on the merits of the * * * consolidated cases." Nowhere in this entry did the court rule that it would allow either party to present further evidence. Therefore, we do not find that the court granted appellants' R.C. 2506.03 motion.

Appellants argue that, according to R.C. 2506.03, they have a right to have the court hear additional evidence. They argue that it is "clear from the face of the transcript that the transcripts do not contain a report of all evidence admitted or proffered by appellants, and appellants were not permitted to examine witnesses purporting to refute their position, arguments, and contentions."

Appellants did not object to the trial court procedure, nor is there any indication in the proffered materials that the result would have been dif-

ferent had there formally been declared a right to present additional evidence. The trial court reviewed the evidence in both of the cases, as it appears was contemplated by the court's ruling on the motion.

Appellants' second assignment of error is overruled.

In appellants' fifth assignment of error composed of four sections and numerous subsections, they argue that the court of common pleas erred in upholding the board's finding that there had been compliance with R.C. 709.033. R.C. 709.033 states that, after a hearing on a petition to annex, the board of county commissioners *shall* enter an order allowing the annexation if it finds certain factors.

Appellants argue that factors necessary to allow annexation pursuant to R.C. 709.033 do not exist in the case at bar. The supposedly missing factors are: (1) that the petition for annexation did not contain valid signatures of a majority of the owners of the real estate in the territory; (2) that the board did not allow appellants to examine witnesses as guaranteed by R.C. 709.032; (3) that Westerville had not, by ordinance or resolution, adopted a statement indicating what services, if any, it would provide to the territory proposed for annexation; and (4) that the proposed annexation would not serve the general good of the territory proposed to be annexed.

Appellants initially argued that, since the board incorrectly found that the petition for annexation contained thirty-nine valid signatures instead of thirty-seven, an injunction should be granted pursuant to R.C. 709.07(D)(2).

Although the board made a mathematical error in its finding, thirty-seven signatures are still a majority and, therefore, the petitioners' rights or interests were not adversely affected by this error.

In order to consider appellants' challenge of the board's decision allowing the annexation, we will apply the standard of review in R.C. 2506.04, which is more lenient than the standard for an injunction, which requires proof by clear and convincing evidence, even though it is debatable as to whether an R.C. Chapter 2506 appeal is available where the commissioners approve a petition for annexation. See *In re Appeal of Bass Lake Community, Inc., supra.* R.C. 2506.04 provides that the court must give consideration to the entire record of the annexation procedure and determine whether there exists a preponderance of reliable, probative and substantial evidence to support the board's decision. If the evidence does not exist, the court may reverse, vacate, modify, or remand the board's decision allowing annexation.

First, appellants challenge the board's decision by contesting the validity of five signatures on the petition.

They argue that three signatures were void, pursuant to R.C. 709.032, because they were obtained by "fraud, duress, misrepresentation, including any misrepresentation relating to the provision of municipal services to the territory proposed to be annexed, or undue influence," and were therefore invalid.

R.C. 709.032 is an exception to the statutory provision for removal of signatures from an annexation petition pursuant to R.C. 709.03.

R.C. 709.03 allows signatures to be removed for any reason within twenty days after the agent for the petitioners notifies the clerk in the petition-signer's township that the annexation petition has been filed with the board. However, none of the appellants requested that their signatures be removed in this manner. Instead, at the public hearing, appellants argued that five signatures were gathered by

misrepresentation. The board found that these signatures were obtained properly. Appellants challenged this holding in the common pleas court, which reviewed the affidavits.

Two people swore in their affidavits that they signed the petition in order to get water service and were not told that they signed an annexation petition. Applying the R.C. 2506.04 appeal standard, the trial court found that the board's decision, that these two signatures were valid and not obtained by misrepresentation, was not supported by reliable, probative, and substantial evidence. However, the trial court upheld the validity of the other three challenged signatures. Therefore, the court found that the petition had thirty-five signatures.

Since appellees have not asked us to reconsider the validity of the two signatures deleted from the petition by the trial court, we will not address that issue.

However, there is a preponderance of substantial, reliable, and probative evidence supporting the court's decision that the other three signatures were *not* obtained by misrepresentation.

It is important to note that the annexation petition clearly stated in four places that it was an annexation petition. The signature gatherers also stated that they told each person whose signature they obtained that the purpose of the petition was to annex the property in question to Westerville.

Two of the three people admitted at the hearing that they received an annexation map when they signed the petition. However, one of these two people stated that she was never told that she was signing an annexation petition and thought it was only about water service. The other of these two persons swore that she did not remember if annexation had been mentioned when she signed the petition, that if it had been, she did not know what it meant, that the signature collector had talked to her about water and that was why she signed the petition. The third person whose signature is contested swore in her affidavit that she talked with the petition gatherer about annexation and water service, but that the petition gatherer did not mention a charge for water installation.

After reviewing the evidence, including the depositions of two of the available signature gatherers, the affidavits and testimony of the three people who appellants claim signed because of misrepresentation, and the annexation petition itself, we conclude that there was reliable, probative, and substantial evidence to support the trial court's decision that these three signatures were valid.

Appellants also contest two other signatures — one person signed for another because she claimed she had a power of attorney, and the other signed with a different last name than the one on record.

R.C. 709.02 was amended to allow agents of corporations to sign annexation petitions. Thus, there is a provision allowing agents to sign for their principal. While it may be argued, by analogy, that a person who has a power of attorney from an owner should be able to sign for that person, it would be an extension of the statutory provision since a corporation must, of necessity, execute documents by use of an agent.

Appellants argue that the power of attorney must be recorded to be valid. R.C. 1337.04 requires that a power of attorney for the "conveyance, mortgage, or lease of an interest in real property must be recorded in the office of the county recorder of the county in which such property is situated * * *." However, a person with a power of attorney who signs a *petition of annexa-*

*tion* does not fall within the recording requirements of R.C. 1337.04.

We need not decide whether an attorney-in-fact may sign an annexation petition for an owner because there are sufficient signatures even if that signature is invalid.

Appellants also argue that the signature of a person whose last name was different from the name of the recorded property owner was not valid. They argue that there was insufficient evidence that the person signing was the same person as the person who owned the property because the signer was not a property owner of record.

R.C. 709.02 requires that an owner is the only one who can sign the petition of annexation and an owner is defined as "any adult individual seized of a freehold estate in land * * *." The agent for the annexation petitioners swore in an affidavit that this contested signature was signed by a record owner of a undivided one-ninth interest in property in the area. In his deposition, the agent stated that, although he did not speak to the person or look for a marriage certificate, he did do a record search in the recorder's office and talked to a man who knew the family history; and, thus, he testified that the contested signature was made by a property owner who had changed her last name.

Appellants offered no evidence contesting this assertion. Even though the statements were hearsay, they were not inherently unreliable and were sufficient to constitute substantial, reliable and probative evidence of the validity of the signature.

Therefore, based on the foregoing discussion, the total number of valid signatures was at least thirty-four, a number in excess of the required thirty-two signatures.

Appellants next argue that the board's failure to allow them a right to examine the witnesses at the board's hearing, pursuant to R.C. 709.032, was error and rendered its decision unlawful.

According to R.C. 709.032, at the hearing "[t]he commissioners, the agent for the petitioners or his attorney, and such owner or his attorney may examine such witnesses, including the owner. * * *"

Appellants argue that they were not given an opportunity to fully examine and cross-examine witnesses. Appellants specifically refer to the testimony of Westerville's city planning director. Appellants' attorney wanted to cross-examine him about the cost of water services to the residents of the territory proposed to be annexed.

Although the board refused to allow appellants' attorney directly to cross-examine the planning director, the board allowed her to examine him in a more indirect manner. The board asked appellants' attorney what her question was and then asked the city planning director her question. Although this procedure is different from that set forth by the Rules of Evidence, the end result was that appellants' attorney examined the city planning director. In addition, the other examples cited by appellants do not support their claim that they were given an inadequate opportunity to fully examine and cross-examine witnesses.

After reviewing the transcript, we find that the board did not fail to allow examination pursuant to R.C. 709.032.

Appellants next argue that the resolution passed by Westerville's City Council, did not comply with R.C. 709.031(B) and 709.033(B).

R.C. 709.031(B) provides that a municipal legislative authority "shall, by ordinance or resolution, adopt a statement indicating what services, if any, the municipal corporation will

provide to the territory proposed for annexation upon annexation."

Westerville Resolution No. 85-27, approved in compliance with this statute, provides that the city will provide police and fire services, water services, refuse removal services, recreation services, street maintenance and related street services.

Appellants argue that many of these services were previously provided to the people who lived in the territory to be annexed. Therefore, they argue that the Westerville resolution was misleading.

However, the plain meaning of R.C. 709.031(B) is that the resolution of the city should state the services that the city will provide. The statute does not call for a recitation of only new services. Additionally, the resolution states that Westerville will provide water service to the territory which will be a new service. Therefore, the Westerville resolution was not misleading.

Appellants further argue that the proposed annexation would not serve the general good of the area. Whether the annexation serves the general good of the area is a factual question and, as such, can only be overturned upon a finding that it is " 'unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable and probative evidence * * *.' " *In re Petition for Annexation of 141.8 Acres* (1985), 24 Ohio App. 3d 215, 24 OBR 392, 494 N.E. 2d 1165, paragraph two of the syllabus. A review of the record and exhibits indicates that there is a water problem in this area of the county and that annexation with its accompanying water service would serve the general good of the area. While there was con-

flicting evidence about the extent of the water problem, there was sufficient evidence of severity to enable us to find that the board's finding in this regard is supported by a preponderance of substantial, reliable, and probative evidence.

Appellants' fifth assignment of error is overruled.

Last, appellants assert that the trial court failed to apply the correct standard of review to two of appellants' claims. However, the trial court stated the correct standard of review in the consolidated cases for both the R.C. Chapter 2506 appeal and the R.C. 709.07 injunction action. It appears that the issues raised in the R.C. Chapter 2506 appeal, which were the primary factual issues in both actions, were evaluated by the trial court by the standard of proof by a preponderance of the reliable, probative and substantial evidence. As we have noted in our review of these factual findings, our evaluation was based upon this standard which is a more favorable standard than determining whether appellants proved the contrary by clear and convincing evidence. Thus, there was no prejudicial error, if there was error at all, in the trial court's application of the standard of proof in the claims presented in the consolidated cases.

Appellants' first assignment of error is overruled.

Appellants' assignments of error are overruled, and the judgments of the trial court are affirmed.

*Judgments affirmed.*

WHITESIDE, P.J., and STRAUSBAUGH, J., concur.