[Cite as *Barga v. St. Paris Village Council*, 2023-Ohio-1067.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY

| | | |
|---|---|---|
| ERICA BARGA | : | |
| | : | |
| Appellant | : | C.A. No. 2022-CA-14 |
| | : | |
| v. | : | Trial Court Case No. 2020 CV 142 |
| | : | |
| VILLAGE COUNCIL OF THE VILLAGE OF ST. PARIS | : | (Civil Appeal from Common Pleas Court) |
| | : | |
| Appellee | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on March 31, 2023

. . . . . . . . . . .

DWIGHT D. BRANNON, KEVIN A. BOWMAN, MATTHEW C. SCHULTZ, JASON P. MATTHEWS, Attorneys for Appellant

LYNNETTE P. DINKLER, Attorney for Appellee

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Erica Barga appeals from a judgment of the Champaign County Court of Common Pleas, which affirmed the decision of the Saint Paris Village Council to terminate her employment as Chief of Police. For the reasons set forth below, we reverse the judgment of the common pleas court and remand this matter for further proceedings consistent with this opinion.

## I.  Facts and Procedural Background

**{¶ 2}** Barga was appointed Chief of Police of the Village of Saint Paris on February 5, 2018.  On November 2, 2020, Saint Paris Mayor Brenda Cook suspended Barga, citing charges of insubordination and misconduct.  Barga was placed on paid administrative leave pending an investigation.  The following day, Cook served Barga with a notice of five charges.

**{¶ 3}** Barga requested a public hearing on the charges.  A hearing was conducted during which Barga presented evidence disputing the allegations contained in the charges presented by Cook.  Following the presentation of evidence, the Village Council ("Council") voted to deliberate in executive session.  The Village Solicitor was summoned to the executive session for a period of approximately 26 minutes.  Thereafter, Council resumed the public hearing.  Council voted on the charges as follows: the first charge was upheld by a vote of five to one; the second charge was upheld by a vote of four to two; the third charge resulted in a tied vote; the fourth charge was not upheld; and the fifth charge was upheld by a vote of four to two.  Finally, Council voted to remove Barga from her position by a vote of four to two.  Council issued its written decision on December 7, 2020.

**{¶ 4}** Barga filed an administrative appeal of the Council's decision with the Champaign County Court of Common Pleas.  After the matter was briefed, the court entered a judgment affirming Council's decision.

**{¶ 5}** Barga appeals.

## II.     Open Meetings Act

{¶ 6} Barga's first assignment of error states:

THE TRIAL COURT ERRED IN HOLDING THAT THE OPEN MEETINGS ACT, R.C. 121.22[,] DID NOT APPLY TO THE PUBLIC MEETING REQUIRED UNDER R.C. 737.171 AND FAILING TO HOLD THAT THE VILLAGE COUNCIL VIOLATED THE OPEN MEETINGS ACT RENDERING ITS DECISION VOID AS A MATTER OF LAW.

{¶ 7} Barga argues that the Village Council violated R.C. 121.22, Ohio's Open Meetings Act, when it deliberated in executive session following the presentation of evidence and arguments during an open meeting.  She cites *Connor v. Village of Lakemore*, 48 Ohio App.3d 52, 547 N.E.2d 1230 (9th Dist.1988), in support of her assertion that R.C. 121.22(G) prohibits holding an executive session to consider the dismissal of a public employee or official.  Additionally, Barga asserts that she was denied her right to due process when the Village Solicitor went into executive session along with Council members.  She argues that the "Village Solicitor had ruled on objections, participated in conferences with Council members, drafted the findings of fact and conclusions of law for the Council and played an improper role in the decision-making process, without the record that would have existed in a public hearing."

{¶ 8} We begin with our analysis with the claim that Council violated the Open Meetings Act.  R.C. 121.22, Ohio's Open Meetings Act or "Sunshine Law," requires that public officials, when meeting to consider official business, conduct those meetings in

public.   R.C. 121.22(C); *State ex rel. Cincinnati Post v. Cincinnati*, 76 Ohio St.3d 540, 542, 668 N.E.2d 903 (1996).   The law requires that public officials take official action and conduct deliberations upon official business only in "open meetings."   R.C. 121.22(A). A "meeting" is defined as "any prearranged discussion of the public business of the public body by a majority of its members."   R.C. 121.22(B)(2).   Any formal action by the public body is invalid if it fails to comport with the Open Meetings Act.   R.C. 121.22(H).

{¶ 9} In answering whether this statute permitted Council to deliberate in executive session after conducting the evidentiary hearing, we find dispositive the following discussion set forth in *Gross v. Village of Minerva Park Village Council*, S.D.Ohio No. 2:12-CV-12, 2012 WL 4009604 (Sept. 12, 2012):

> * * * The Ohio Supreme Court offers considerable guidance in substantially similar frameworks, albeit between different types of affected parties and public entities than a police officer and a village council.   The opinions in *TBC Westlake, Inc. v. Hamilton Cty. Bd. of Revision*, 81 Ohio St.3d 58, 689 N.E.2d 32 (1998), and *Ohio ex rel. Ross v. Crawford Cty. Bd. of Elections*, 125 Ohio St.3d 438, 928 N.E.2d 1082 (2010), in combination with other Ohio appellate decisions containing similar reasoning, dictate that this Court find in favor of Defendants. Plaintiff's attempt to limit these cases to their facts is not well-taken.
>
> *TBC Westlake* involved a real property valuation dispute, which the corporate property owner appealed to the Ohio Board of Tax Appeals ("BTA"). *See* 81 Ohio St.3d at 58-59, 689 N.E.2d 32. The BTA held a public

hearing, pursuant to Ohio Admin. Code § 5717–1–15, and issued a decision, which was then appealed to the Ohio Supreme Court. *Id.* at 59-60, 689 N.E.2d 32. The Supreme Court was faced with the issue of whether the OMA [Open Meeting Act] applied to the adjudication proceedings at the BTA. *Id.* at 61, 689 N.E.2d 32. The court determined that the BTA was acting as a quasi-judicial body by conducting a hearing in the nature of a legal proceeding, providing notice and the opportunity to introduce testimony through witnesses, and exercising discretion to resolve the dispute between conflicting parties. *Id.* at 62, 689 N.E.2d 32. The court specifically held that "the Sunshine Law does not apply to adjudications of disputes in quasi-judicial proceedings, *such as* at the BTA." *Id.* (emphasis added). The court reasoned that quasi-judicial bodies require privacy to deliberate so that they can evaluate and resolve disputes away from the pressure of the litigants involved. *Id.* "Privacy provides an opportunity for candid discussion * * * on the legal issues and the facts [in order for the quasi-judicial body to] reach a sound decision." *Id.*

In *Ross*, a voter brought proceedings in the Ohio Supreme Court after the county board of elections ("BOE") removed him as an eligible voter at his registered address. *See* 125 Ohio St.3d at 438. The BOE had held an adjudicatory hearing, pursuant to Ohio Rev.Code § 3503.24(B), that was open to the public. *Id.* at 439. At the conclusion of the public hearing, in which testimonial and documentary evidence was received and arguments

were made, the BOE retired into executive session to deliberate in private. *Id.* The BOE determined that the voter was not a qualified elector. *Id.* Before the Supreme Court, the voter argued that the BOE had violated the OMA by failing to vote in public to hold an executive session and then failing to publicly vote after the deliberations. The court disagreed. In reaching its decision, the court affirmed its earlier finding in *Matheny* [*v. Frontier Local Bd. of Edn.*, 62 Ohio St.2d 362, 368, 405 N.E.2d 1041 (1980)] that "the Sunshine Law applies to meetings but not to certain hearings." *Id.* at 442 * * *. The court further explained that the OMA "is only applicable to public bodies performing public functions at public meetings." 125 Ohio St.3d at 443, 928 N.E.2d 1082. Thus, a public body performing a quasi-judicial function is not covered by the OMA. *Id.* "[And] because a quasi-judicial proceeding * * * is not a meeting for purposes of R.C. 121.22, the Sunshine Law is inapplicable from the outset." *Id.* at 444, 928 N.E.2d 1082.

Within its *TBC Westlake* opinion, the Ohio Supreme Court cited favorably to the decisions of *In re City of Westerville v. Hahn*, 52 Ohio App.3d 8, 556 N.E.2d 200 (1988), and *Angerman v. State Med. Bd.*, 70 Ohio App.3d 346, 591 N.E.2d 3 (1990), which, notably, both arose from the 10th Appellate District, where the instant matter originated. In *Westerville*, the appellants argued that the Franklin County Board of Commissioners' order of annexation was invalid because the board's decision resulted from private deliberations in violation of § 121.22. *See* 52 Ohio App.3d at 11,

556 N.E.2d 200. The appellate court disagreed: "An R.C. 709.032 annexation hearing is a quasi-judicial proceeding. As a formal hearing, statutorily mandated, an annexation hearing held pursuant to R.C. 709.032 falls into the category of gatherings which are not meetings. Hence, such hearing is not subject to the requirements of R.C. 121.22 * * *." *Id.* at ¶ 4, 556 N.E.2d 200 of syllabus [sic].

In *Angerman*, the appellant argued that the State Medical Board violated § 121.22, thus invalidating the board's decision to revoke appellant's medical license, because the board's deliberations were not conducted in a meeting open to the public. *See* 70 Ohio App.3d at 351, 591 N.E.2d 3. The court again disagreed: "Although R.C. 121.22 makes no general exception for judicial or quasi-judicial deliberations, * * * it necessarily follows that such deliberations are not intended to be within the purview of the open-meeting requirement of R.C. 121.22." *Id.* The court reasoned that the reference to a "public" hearing in 121.22(G)(1) applies only to the hearing itself. *Id.* at 352, 591 N.E.2d 3. Thus, the court concluded that "the deliberations of a quasi-judicial administrative tribunal as to the action to be taken following a public hearing upon charges against a licensee need not be open to either the licensee or the public * * *." *Id.*

Other Ohio appellate courts have likewise applied the quasi-judicial exception to find no OMA violation by public entities that engaged in private deliberations, including a case from the 9th Appellate District, from which

*Conner* was decided over a decade before. See *Castle Manufactured Homes, Inc. v. Tegtmeier*, No. 98CA0065, 1999 WL 771605, at *5-*6 (9th App. Dist. Sept. 29, 1999) ("Because the Zoning Board was acting in a quasi-judicial capacity, R.C. 121.22 did not apply to its deliberations [held in executive session] regarding the 1998 variance request."); *see also Ohio ex rel. Eaton v. Erie Cty. Bd. of Elections*, No. E–05–065, 2006 WL 513910, at *5-*6 (6th App. Dist. Feb. 28, 2006) (concluding that board of election's hearing on challenge to elector's status was a quasi-judicial proceeding not subject to R.C. 121.22, thus board's weighing of evidence in private executive session was acceptable); *Groff-Knight v. Bd. of Zoning Appeals*, No. 03CAH08042, 2004 WL 3465744, at *5 (5th App. Dist. June 14, 2004) ("[T]he deliberative nature of the quasi-judicial function of the board of zoning appeals is not a meeting for purposes of R.C. 121.22. The hearing, evidence, motion and vote pursuant to R.C. 519.14 are open to the public, but the deliberations are not.").

In sum, Ohio Supreme Court precedent, as well as a preponderance of relevant appellate court decisions, have established the following:

(1) Affected parties who request a "public hearing" before a public body do not automatically receive such a hearing, pursuant to § 121.22(G), unless a separate statutory provision entitles them to it.

(2) Even when an affected party is allowed a "public hearing," this does not automatically mean that the public body must deliberate the

evidence received at the hearing in an "open meeting."

(3) When a public body is acting in a quasi-judicial capacity, the adjudicatory hearing process—including the deliberations that follow—is not a "meeting" under the OMA; thus these deliberations may be held privately in executive session.

*Gross* at *5-7.

{¶ 10} In this case, as in *Gross*, Barga was statutorily entitled to a hearing as provided by R.C. 737.171. Further, she requested a public hearing. A public hearing was conducted during which Barga was represented by counsel. She was permitted to present evidence, examine witnesses, and present argument. Council deliberated and exercised its judgment to determine whether to dismiss the charges or uphold the charges and dismiss Barga. Council's decision was appealable, and Barga exercised her right to appeal. Thus, the record supports a finding that the hearing was a quasi-judicial proceeding and that Council was not bound by the Open Meetings Act to conduct its deliberations in public.[1] Therefore, we find Barga's claim that Council violated the Open Meetings Act lacks merit.

{¶ 11} We next address Barga's claim that counsel for the Village should not have been present during the deliberations conducted in executive session.

{¶ 12} We find the decision of the Third District Court of Appeals in *Cummins v. Village of Minster*, 2015-Ohio-4129, 43 N.E.3d 902 (3d Dist.) to be instructive. In

---

[1]The decision in *Conner*, upon which Barga relies, contains no indication that the parties or the court considered the issue of whether the hearing before the Council constituted a quasi-judicial hearing exempting it from the Open Meetings Act.

*Cummins*, Kirby Cummins's position as a patrol officer was terminated by the Village Mayor Dennis Kitzmiller. Cummins appealed the termination to the village council. A hearing before the council was conducted. Following the hearing, Kitzmiller, James Petrie, the attorney who presented the case to the village council on behalf of Kitzmiller, and James Hearn, the village solicitor who acted as the hearing officer and who also participated in the investigation of Cummins's conduct, were permitted to be present during deliberations while Cummins's attorney was excluded. Cummins's termination was upheld. Cummins appealed to the common pleas court, which also upheld the termination. Thereafter, in his appeal to the Third District, Cummins claimed he had been denied due process when his attorney was excluded from the deliberations that were attended by Kitzmiller, Petrie, and Hearn. In addressing the matter, the Third District stated:

> In this case, the Village Council was hearing the appeal of Kitzmiller's decision and was expected to act as an unbiased entity. Petrie was hired to present the case to the Council on behalf of Kitzmiller and was acting as an attorney for a party. Hearn was the hearing officer who conducted the investigation. All three of these entities were responsible for bearing the burden of proof before the Council and thus had an interest in the outcome of the hearing. Clearly, allowing these three to participate in the deliberations of Council as to whether to approve Kitzmiller's decision while excluding Cummins has an appearance of unfairness. This would be no different than allowing the prosecutor to participate in the deliberations of a

jury or allowing a trial court judge to participate in the appellate review. The trial court in this case found no error because the Mayor is required to preside over the Council and the Village has the right to the advice of legal counsel. While the village may have the right to the advice of legal counsel, that counsel should not both act as the prosecutor for the claim and act as legal counsel to the Council discussing the validity of the claim which he just prosecuted. *See Harmon v. City of Dayton*, 2d Dist. Montgomery No. 15555, 1996 WL 417101 (July 26, 1996). The trial court claims there was no error because the Council already knew the position of Petrie before conferring with him. The fact that the Council already knew the argument does not mean that Petrie should have participated in the deliberations. "[I]f ex parte communications are considered by the decision-maker without notice to the accused or opportunity for the accused to respond, then due process is violated." *In re Swader*, 12th Dist. Warren No. CA2000-04-036, 2001-Ohio-4191, 2001 WL 121084. Here, Kitzmiller, whose decision was the subject of the appeal, and Petrie both participated in the closed deliberations of the Village Council over the objection of Cummins and Cummins was excluded. That makes the participation ex parte. Cummins was entitled to a fair and unbiased hearing, regardless of who was conducting it and that includes avoiding the appearance of bias as well. This is especially true when deliberations are held in executive session and there is no way for a party to determine whether there was actual bias.

In determining that there was no violation of Cummins due process rights, the trial court cites *Hutchinson v. Wayne Township Board of Zoning Appeals*, 12th Dist. Butler No. CA2012-02-032, 2012-Ohio-4103, 2012 WL 3893782. However in *Hutchinson*, the issue was whether due process was violated when a board member performed an extra-judicial investigation into the number of cars traveling along a road. The board member then made statements at the hearing as to what she learned. That is a very different scenario than allowing the person whose decision is being reviewed on appeal and the counsel prosecuting the claim from being allowed to participate in the deliberations. The trial court claims that since this was not an appeal from an administrative agency, but rather an appeal to a legislative body, the same standards of due process do not apply. The trial court does not give any reasoning for this other than the fact that the legislature allows for a de novo trial. However, when a legislative body takes on a quasi-judicial task, i.e. hearing an appeal of a decision by the executive branch, logic dictates that the hearing should be unbiased regardless of the branch of government overseeing the appeal. The U.S. Supreme Court has stated that "any tribunal permitted by law to try cases and controversies not only must be unbiased but also must avoid even the appearance of bias." *Commonwealth Coatings Corp. v. Continental Cas. Co.*, 393 U.S. 145, 150, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968) (holding that decision by arbitrator from arbitration board with appearance of impropriety

must be set aside even though there was no evidence of bias by the arbitrator). Even the holding in *Hutchinson* acknowledges that ex parte communication is a violation of due process. *Id.* The decision was affirmed because the appellant had not objected at the hearing and the matter was reviewed pursuant to a plain error standard. That is not the case before this court as Cummins objected to the ex parte participation of Kitzmiller and Petrie. Since there was ex parte communication between Kitzmiller, Petrie, and the Village Council, Cummins due process rights were violated and the trial court erred by finding that they were not.

However, although Cummins' due process rights were violated, the decision of the trial court need not automatically be reversed. In this case, the only alleged ex parte communications took place during the deliberations, not during the hearing itself. The trial court conducted a de novo review of the record and held a hearing for additional evidence. Additionally, the parties submitted a stipulation of the facts. The Supreme Court of Ohio has held that when a de novo review is conducted and that review is not affected by the ex parte communications, then any error is harmless. *In re Investigation of Natl. Union Fire Ins. Co. of Pittsburgh Pa.*, 66 Ohio St.3d 81, 88, 609 N.E.2d 156 (1993). Since the trial court conducted an independent review of the record and the record was not tainted by any ex parte communication, any error resulting from the due process violation would be harmless. * * *

*Cummins* at ¶ 13-15.

**{¶ 13}** Although we do not know what role – advisory, participatory, or both – the village solicitor played during his 26-minute presence in executive session, consistent with *Cummins v. Village of Minster*, we find that the solicitor's presence was problematic and, perhaps, a due process violation. But, as in *Cummins*, we find any error harmless. We reach this conclusion because, as discussed below: the matter will be remanded for the trial court to conduct a de novo review; the Village of St. Paris will have the burden of proof by a preponderance of the evidence; the trial court, in its discretion, may cause the record to be supplemented; and the trial court may substitute its judgment for that of Council. In our opinion, this "second bite at the apple" will act to purge any prejudice the solicitor's role in the deliberations may have created.

**{¶ 14}** The first assignment of error is overruled in its entirety.

### III.    Standard of Review

**{¶ 15}** The second assignment of error asserted by Barga states as follow:

THE TRIAL COURT ERRED BY FAILING TO APPY THE STANDARD OF REVIEW FOR AN APPEAL ON "QUESTIONS OF LAW AND FACT" APPLICABLE UNDER R.C. 737.171, BY FAILING TO CONDUCT A DE NOVO REVIEW AND BY ASSIGNING A BURDEN OF PERSUASION TO THE APPELLANT.

**{¶ 16}** Barga contends the trial court did not utilize the correct standard of review in determining whether Council's decision was supported by the evidence.

{¶ 17} The record demonstrates that Council issued findings of fact and conclusions of law regarding its termination decision. In that document, Council noted that charges were brought against Barga in accordance with R.C. 737.171 and that her removal was governed by R.C. 737.171. In her appeal to the Champaign County Common Pleas Court, Barga asserted that she was appealing in accordance with R.C. 737.171 as well as Ohio R.C. Chapters 2505 and 2506.

{¶ 18} R.C. 737.171 states, in pertinent part: "In the case of removal from office, the person so removed may appeal on questions of law and fact the decision of the legislative authority to the court of common pleas of the county in which the village is situated."

{¶ 19} In *O'Neill v. Village of Tremont*, 2d Dist. Clark No. 2008-CA-66, 2009-Ohio-3768, a case involving the termination of a village police chief, we stated:

O'Neill's appeal of his removal was brought pursuant to R.C. 737.171, which provides removal procedures for marshals, and pursuant to R.C. 2506.01(A), which authorizes appeals from administrative decisions of political subdivisions. R.C. 737.171 provides, in pertinent part, that:

"[I]f the mayor of a village has reason to believe that a duly appointed marshal of the village has been guilty of incompetency, inefficiency, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, or any other acts of misfeasance, malfeasance, or nonfeasance in the performance of the marshal's official duty, the mayor shall file with the legislative authority of the village written

charges against that person setting forth in detail the reason for the charges and immediately shall serve a true copy of the charges upon the person against whom they are made.

"Charges filed under this section shall be heard at the next regular meeting of the legislative authority occurring not less than five days after the date those charges have been served on the person against whom they are made. The person against whom those charges are filed may appear in person and by counsel at the hearing, examine all witnesses, and answer all charges against that person.

"At the conclusion of the hearing, the legislative authority may dismiss the charges, suspend the accused from office for not more than sixty days, or remove the accused from office.

"Action of the legislative authority removing or suspending the accused from office requires the affirmative vote of two-thirds of all members elected to it.

"In the case of removal from office, the person so removed may appeal on questions of law and fact the decision of the legislative authority to the court of common pleas of the county in which the village is situated. The person shall take the appeal within ten days from the date of the finding of the legislative authority."

* * *

The statute that the parties agree controls this case, R.C. 737.171,

provides that: "In the case of removal from office, the person so removed may appeal on questions of law and fact the decision of the legislative authority to the court of common pleas of the county in which the village is situated." The ability to appeal on questions of fact, as well as on questions of law clearly permits the common pleas court to weigh the evidence, without being limited by the findings of fact made by the legislative authority of the municipality.

*O'Neill* at ¶ 13-21, 24.

{¶ 20} Similarly, in discussing R.C. 124.34, which sets forth the same appellate standard in the common pleas court, i.e. on questions of law and fact, the First District Court of Appeals has stated:

> * * * In the court of common pleas, the officer may appeal questions both of law and fact. R.C. 124.34. The scope of the common pleas appeal is "governed by the provisions of R.C. Chapter 2505 to the extent they are applicable." *Chupka v. Saunders*, 28 Ohio St.3d 325, 327, 504 N.E.2d 9, 10 (1986). In this case, one applicable section of the chapter is R.C. 2505.01(A)(3), which defines this type of common pleas proceeding as "a rehearing and retrial of a cause upon the law and the facts." That rehearing, therefore, is a trial de novo. *Chupka* at 327 * * *; see, also, *Cincinnati v. Chase* (Dec. 23, 1992), Hamilton App. No. C-910808, unreported, 1992 WL 389133; *Matthews v. Johnson* (Oct. 3, 1990), Hamilton App. No. C-890300, unreported, 1990 WL 143465.

In a trial de novo, the common pleas court independently examines the record as it appeared before the commission. In addition, the court, in its discretion, may supplement the record with additional evidence. *Chupka*, * * * at 327-328 * * *; *Newsome v. Columbus Civ. Serv. Comm.* (1984), 20 Ohio App.3d 327, * * * 486 N.E.2d 174.   At the commission and at the trial court, the burden of proof is on the appointing authority, in this case, the police chief and safety director of North College Hill (collectively "city"). *Cupps v. Toledo* (1961), 172 Ohio St. 536, * * * 179 N.E.2d 70, paragraph one of the syllabus; *Schaffer v. W. Farmington* (1992), 82 Ohio App.3d 579, 587, 612 N.E.2d 1247, 1252. The city must prove the dismissal charges by a preponderance of the evidence. * * *

*Beyersdoerfer v. Shocket*, 93 Ohio App.3d 647, 650, 639 N.E.2d 818 (1st Dist.1994).

{¶ 21} Based upon the above-cited authority, "[a] trial de novo is mandatory in cases where the appeal is based upon questions of law and fact * * *."   *Cummins,* 2015-Ohio-4129, 43 N.E.3d 902, ¶ 9, citing *Bryant v. Hamilton Civ. Serv. Comm.*, 10th Dist. Franklin No. CA2008-10-243, 2009-Ohio-3676, ¶ 30.   *See also Westlake Civ. Serv. Comm. v. Pietrick*, 142 Ohio St.3d 495, 2015-Ohio-961, 33 N.E.3d 18, ¶ 24 ("An appeal on questions of law and fact is 'a rehearing and retrial of a cause upon the law and facts.' "); *Baron v. Civ. Serv. Bd. of Dayton*, 2d Dist. Montgomery No. 25273, 2012-Ohio-6179, ¶ 16 ("[A] rehearing and retrial of a cause upon the law and the facts" constitutes a de novo review.)

{¶ 22} In this case, the trial court stated that:(1) its review of Council's decision

was guided solely by R.C. 2506.04 and it was not permitted to conduct a de novo review; (2) the decision of the council was "presumed to be valid, placing the burden of persuasion upon [Barga];" and (3) "[w]hen the evidence consists of conflicting testimony of approximately equal weight, the Court should defer to the determination of the Village Council." This was clearly incorrect. Thus, we agree with Barga that the court used an improper standard of review. As such, the case must be remanded to the trial court for a de novo review. In this de novo review, the Village of St. Paris will have the burden of proof by a preponderance of the evidence; at the trial court's discretion, the record may be supplemented, and the trial court may substitute its judgment for that of the Council. *Cummins,* 2015-Ohio-4129, 43 N.E.3d 902, at ¶ 9.

**{¶ 23}** Accordingly, the second assignment of error is sustained.

## IV.    Moot Assignments of Error

**{¶ 24}** The third, fourth, sixth and seventh assignments of error state:

THE TRIAL COURT ERRED BY AFFIRMING THE VILLAGE COUNCIL'S FINDING THAT ERICA BARGA GIVEN CAUSE [SIC] FOR TERMINATION BY BEING INSUBORDINATE TO THE VILLAGE MAYOR.

THE TRIAL COURT ERRED BY FAILING TO FIND THAT ERICA BARGA'S TERMINATION WAS THE RESULT OF RETALIATION FOR FILING CHARGES OF DISCRIMINATION WITH THE OCRC.

THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO PERMIT SUPPLEMENTATION OF THE RECORD IN ACCORDANCE

WITH THE STANDARD APPLICABLE TO APPEALS ON QUESTIONS OF LAW AND FACT.

THE TRIAL COURT ERRED IN FAILING TO FIND THAT APPELLANT WAS NOT AN EXEMPT EMPLOYEE UNDER FLSA.

{¶ 25} All of these assignments of error claim that the common pleas court erred in affirming Council's decision. Because we have recognized that the trial court resolved the relevant issues using an incorrect standard of review, and because this matter will be remanded to the trial court for consideration under the appropriate standard of review, we need not consider these assignments of error at this time. Accordingly, the third, fourth, sixth and seventh assignments of error are overruled.

## V. Barga's Initial Suspension

{¶ 26} The fifth assignment of error states:

THE TRIAL COURT ERRED BY FAILING TO FIND THAT APPELLANT'S INITIAL SUSPENSION BY THE MAYOR, WITHOUT AFFIRMATION BY THE VILLAGE COUNCIL RESULTED IN THE TERMINATION BEING ILLEGAL

{¶ 27} Barga claims her one-day suspension was improper because R.C. 737.171 does not permit a suspension without a vote of the Village Council. Barga then argues that the subsequent decision to terminate her employment was void based upon the illegal suspension.

{¶ 28} R.C. 737.171 provides in pertinent part as follows:

* * * [I]f the mayor of a village has reason to believe that a duly appointed marshal of the village has been guilty of incompetency, inefficiency, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, or any other acts of misfeasance, malfeasance, or nonfeasance in the performance of the marshal's official duty, the mayor shall file with the legislative authority of the village written charges against that person setting forth in detail the reason for the charges and immediately shall serve a true copy of the charges upon the person against whom they are made.

Charges filed under this section shall be heard at the next regular meeting of the legislative authority occurring not less than five days after the date those charges have been served on the person against whom they are made. The person against whom those charges are filed may appear in person and by counsel at the hearing, examine all witnesses, and answer all charges against that person.

At the conclusion of the hearing, the legislative authority may dismiss the charges, suspend the accused from office for not more than sixty days, or remove the accused from office.

Action of the legislative authority removing or suspending the accused from office requires the affirmative vote of two-thirds of all members elected to it.

{¶ 29} The Mayor suspended Barga on November 2 without a vote of Council.

Thus, Barga is correct that her suspension was not in strict accordance with R.C. 737.171. However, since she was paid during her suspension, we cannot say it was contrary to the purpose of the statute. *See Fairbanks v. Wayne*, 6th Dist. Wood No. WD-06-001, 2006-Ohio-6057, ¶ 25-26. Further, any error regarding the suspension did not affect the subsequent termination, as the decision to terminate Barga's employment was based on Council's vote on the matter following a full hearing.

{¶ 30} The fifth assignment of error is overruled.

## VI. Conclusion

{¶ 31} The second assignment of error being sustained, the judgment of the common pleas court is reversed, and this matter is remanded for a de novo review of the decision of the Saint Paris Village Council.

. . . . . . . . . . . . .

WELBAUM, P.J. and EPLEY, J., concur.